*882 BROWNING, Circuit Judge.
Leroy J. Robbins appeals an affirmance of the Commissioner of Social Security’s partial denial of benefits. We have jurisdiction to review under 28 U.S.C. § 1291. We reverse and remand because the Commissioner’s decision is not supported by substantial evidence.
I. Background
In October 1996, Robbins filed applications for supplemental security income and disability insurance benefits. He alleged he has been disabled since August 1993 by depression and severe impairments to his neck, left shoulder, back and knees. After his applications were denied initially and upon reconsideration, Robbins requested and was granted a hearing in March 1999 before Administrative Law Judge (“ALJ”) Eileen Burlison during which the August 1998 testimony of Robbins and his son Rodney were accepted into the record. Judge Burlison denied Robbins’s claims and, in August, 2000, the Social Security Appeals Council denied his request for review. Robbins then filed a complaint for review with the district court.
In August 2001, based on a stipulation by the parties, the district court reversed Judge Burlison’s determination. The district court ordered the ALJ on remand to: order and evaluate a consultative exam as to Robbins’s mental impairment claim; hold a new hearing; reevaluate the credibility of Robbins and of other lay testimony; and reevaluate Robbins’s residual functional capacity (“RFC”) and ability to perform past relevant or other work. In February 2003, a second hearing was conducted by Administrative Law Judge Riley Atkins, who found Robbins disabled as of September 7, 1998, but not before. Because Robbins did not file a written challenge to this decision, Judge Atkins’s determination became the Commissioner’s final decision.
In March 2003, Robbins filed a complaint for review with the district court challenging this partial denial of benefits. In September 2004, the district court affirmed the Commissioner’s decision. Robbins timely appeals that judgment, challenging the ALJ’s determinations at steps four and five of the Commissioner’s five-step sequential evaluation process for determining if a claimant is disabled.[1]
II. Analysis
A. Standard of Review
We review de novo the findings of the district court. Flaten v. Sec’y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir.1995). We may set aside a denial of benefits only if it is not supported by substantial evidence or is based on legal error. Id. “Substantial evidence” means more than a mere scintilla, but less than a preponderance, i.e., such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Young v. Sullivan, 911 F.2d 180, 183 (9th Cir.1990). If the evidence can support either affirming or reversing the ALJ’s conclusion, we may not substitute our judgment for that of the ALJ. Flaten, 44 F.3d at 1457. However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a “specific quantum of supporting evidence.” Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir.1989).
B. RFC Determination
As part of his step four determination, the ALJ determined Robbins’s RFC. See 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545; Soc. Sec. Ruling 96-8p (July 2, 1996) (“SSR 96-8p”), 1996 WL 374184. The *883 ALJ found Robbins was capable of: (1) “ ‘less than a wide or full range of Medium’ exertion with Postural and Manipulative non-exertional limitations” from his alleged August 1993 onset date through September 6, 1998; and (2) from September 7, 1998 on, “ ‘less than a wide or full range of Light’ exertion, requiring a’sit-stand-walk option’ “ in addition to the same, additional non-exertional limitations.
At step five, the ALJ found that, for the period between August 1993 and September 6, 1998, Robbins was not disabled. This conclusion relied on testimony of a vocational expert at the February 2003 hearing that because, based on his determined “medium” RFC, Robbins had been capable of working as a “general clerk” or “security or gate guard,” positions that had existed in significant numbers in the national economy during that time. Based on similar testimony and the determined “light” RFC, the ALJ found Robbins was disabled as of September 7,1998.
1. Adverse Credibility Finding
In determining a claimant’s RFC, an ALJ must consider all relevant evidence in the record, including, inter alia, medical records, lay evidence, and “the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.” See SSR 96-8p, 1996 WL 374184, at *5; accord 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). Moreover, SSR 96-8p directs that “[c]areful consideration” be given to any evidence about symptoms “because subjective descriptions may indicate more severe limitations or restrictions than can be shown by medical evidence alone.” See SSR 96-8p, 1996 WL 374184, at *5. When giving such consideration, if the record establishes the existence of a medically determinable impairment that could reasonably give rise to the reported symptoms, an ALJ must make a finding as to the credibility of the claimant’s statements about the symptoms and their functional effect. See Soc. Sec. Ruling 96-7p (July 2, 1996) (“SSR 96-7p”), 1996 WL 374186, at *1; 20 C.F.R. §§ 404.1529, 416.929; Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir.1996).
While an ALJ may find testimony not credible in part or in whole, he or she may not disregard it solely because it is not substantiated affirmatively by objective medical evidence. See SSR 96-7p, 1996 WL 374186, at *1; Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir.1997). Moreover, unless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each. See Smolen, 80 F.3d at 1283-84 (“Once a claimant meets the Cotton test and there is no affirmative evidence suggesting she is malingering, the ALJ may reject the claimant’s testimony regarding the severity of her symptoms only if he makes specific findings stating clear and convincing reasons for doing so.”).
In this case, there is no dispute that the record establishes the existence of impairments to Robbins’s shoulder, back and knees as of August 1993, which could have given rise to the severe pain and functional limitations between that date and September 1998, to which Robbins testified in his record affidavit. As a result, the ALJ was required to make a credibility finding as to Robbins’s own testimony. Because the ALJ made no finding that Robbins was malingering, he was required to give clear and convincing reasons in support of his adverse credibility finding. Id.
The record shows that the ALJ found Robbins’s testimony to be “not entirely credible.” Reading the ALJ’s fleeting *884 credibility finding in the best light, he offers the following as justification: First, Robbins’s testimony was “not consistent with or supported by the overall medical evidence of record”; second, “his testimony l'egarding his alcohol dependence and abuse problem remains equivocal, based on his conflicting testimony and reports to doctors of maintaining sobriety, versus continuing to drink in lesser amounts.”
Taking the latter first, we do not consider a cursory finding that a single line of testimony is “equivocal” sufficient to constitute substantial evidence. While conflicting or inconsistent testimony concerning alcohol use can contribute to an adverse credibility finding, see, e.g., Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir.1999) (finding applicant’s testimony not credible where there was evidence of malingering and where the testimony and “various statements regarding his drinking were not consistent”), in this case it cannot justify such a finding alone and without further corroboration or explanation.[2]
As for the former justification, it is exactly the type we have previously recognized the regulations prohibit. See SSR 96-7p, 1996 WL 374186, at *1; Light, 119 F.3d at 792 (“In this case, the ALJ disbelieved Light because no objective medical evidence supported Light’s testimony regarding the severity of subjective symptoms from which he suffers, particularly pain. An ALJ may not discredit a claimant’s subjective testimony on that basis. To find the claimant not credible, the ALJ must rely either on reasons unrelated to the subjective testimony (e.g., reputation for dishonesty), on conflicts between his testimony and his own conduct, or on internal contradictions in that testimony.”).
In addition, we note that the ALJ did not provide a “narrative discussion” that “contain[s] specific reasons for the finding ..., supported by the evidence in the case record”; nor was his brief notation “sufficiently specific to make clear ... the weight the adjudicator gave to the individual’s statements and the reasons for that weight,” as he is required to do. See SSR 96-7p, 1996 WL 374186, *2; SSR 96-8p, 1996 WL 374184, at *7. So, even if the ALJ had given facially legitimate reasons for his partial adverse credibility finding, the complete lack of meaningful explanation gives this court nothing with which to assess its legitimacy. While an ALJ may *885 certainly find testimony not credible and disregard it as an “unsupported, self-serving statement,” we cannot affirm such a determination unless it is supported by specific findings and reasoning. See Flaten, 44 F.Bd at 1464.
2. Lay Witness Testimony
It is uncontested that the ALJ erred by failing to account for the August 1998 testimony of Robbins’s son Rodney, in which Rodney offered eyewitness evidence supporting his father’s claims as to functional limitations and severity of pain. As the Commissioner concedes, the ALJ is required to account for all lay witness testimony in the discussion of his or her findings. Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir.2001) (“Lay testimony as to a claimant’s symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so.”).
We disagree with the Commissioner’s suggestion that this error was harmless. While there may be cases in which the failure to consider lay witness testimony can be harmless, this is not one of them. We recently clarified the proper application of the harmless error standard in Social Security cases. See Stout v. Comm’r, 454 F.3d 1050, 1055-56 (9th Cir.2006). After reviewing our relevant prior decisions, we explained that we have only found harmless error when it was clear from the record that an ALJ’s error was “inconsequential to the ultimate nondisability determination,” noting that we had never found harmless an “ALJ’s silent disregard of lay testimony about how an impairment limits a claimant’s ability to work.” Id. Accordingly, we held in Stout that “where the ALJ’s error lies in a failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination.” Id. at 1056.
Besides Robbins’s own testimony, the ALJ had only that of his wife, daughter and son to consider. Given that the unaccounted-for testimony of Robbins’s son directly supports his claim of disability since August 1993, the fact that the ALJ considered the similar testimony of Robbins’s daughter cannot alone support a finding of harmlessness. Indeed, if credited, the testimony of Robbins’s son adds substantial weight not only to Robbins’s claim, but also to the testimony of Robbins’s wife and daughter, which support Robbins’s claim. Because the ALJ did not make a legally sufficient adverse credibility finding with regard to Robbins’s own testimony, we cannot say with respect to Rodney’s testimony that “no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination.” Id.
By failing to properly account for the testimony of Robbins and his son, the ALJ erred in assessing the record testimony offered in support of Robbins’s disability claim. While the ALJ’s RFC determination appears proper as to the limitations he considered, his failure to explain his dismissal of other claimed limitations results in our finding that substantial evidence does not support the ALJ’s pre-September 1998 RFC determination.
C. Vocational Expert Hypothetical
Robbins also challenges the ALJ’s step five determination of his ability before September 8, 1998 to perform other work available in the national economy. He argues that the hypothetical posed to the *886 vocational expert was inadequate because it excluded some of his functional limitations. This challenge engages the errors discussed above.[3]
As the Commissioner correctly recognizes, in hypothetical posed to a vocational expert, the ALJ must only include those limitations supported by substantial evidence. See Osenbrock v. Apfel, 240 F.3d 1157, 1163-65 (9th Cir.2001). Conversely, an ALJ is not free to disregard properly supported limitations. The ALJ’s failure to account for the testimony of Robbins and his son calls into question the validity of his determination of Robbins’s limitations and RFC before September 1998. Because those determinations were flawed, the hypothetical posed to the vocational expert was legally inadequate. Id. Such a failure cannot be deemed harmless because, if the ignored testimony is credited, a proper hypothetical would have included limitations which, the record suggests, would have been determinative as to the vocational expert’s recommendation to the ALJ. Accordingly, the ALJ’s step five determination is unsupported by substantial evidence. See id. at 1163 (“An ALJ must propose a hypothetical that is based on medical assumptions supported by substantial evidence in the record that reflects each of the claimant’s limitations.”).
REVERSED and REMANDED.

. The five-step sequential evaluation is detailed at 20 C.F.R. §§ 404.1520; 416.920.

. Indeed, with no reference to the record in this part of the decision, we are left to guess what testimony the ALJ was considering and why he thought it undermined Robbins’s credibility. Our thorough review of the record shows one potential conflict in Robbins's self-reporting of his alcohol use. On November 12, 1996, an examiner noted that Robbins "occasionally drinks now, but stated that he did have a problem with alcohol.” Four days later, another examiner recorded "The claimant has been drinking up to a case a day. This drinking escalated beginning in 1988.” However, it is not immediately clear whether the "case a day” reference concerns contemporary consumption or the earlier period of heavier drinking Robbins was describing. Regardless, taken as a whole, the record suggests that Robbins had a history of excessive alcohol use, punctuated by periods of sobriety followed by relapse, and generally had "poor insight into his alcoholic problems.” Our review of the record on this issue, however, is beside the point. See SEC v. Chenery Corp., 332 U.S. 194, 196, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947) (emphasizing the "fundamental rule of administrative law” that "a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency”); Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir.2003) ("We are constrained to review the reasons the ALJ asserts.”). The ALJ's assessment of this or any other testimony about alcohol use is missing from the record, and no effort appears to have been made to investigate the possible disparity during the hearing.

. As it was not raised and preserved for appeal at the hearing, we do not address Robbins’s argument that the AU erred in relying on the vocational expert's testimony as to the number of jobs available without establishing a foundation for that testimony. See Meanel v. Apfel, 172 F.3d 1111, 1115 (9th Cir.1999).