Michael R. SCHOW, Plaintiff–
Appellant,

v.

Michael J. ASTRUE,* Commissioner of
Social Security Administration,
Defendant–Appellee.

No. 05–35973.

United States Court of Appeals,
Ninth Circuit.

---

* The Honorable William Q. Hayes, United States District Judge for the Southern District of California, sitting by designation.

** This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

* Michael J. Astrue is substituted for his predecessor Jo Anne Barnhart as Commissioner of

Argued and Submitted Dec. 3, 2007.**

Filed April 8, 2008.

the Social Security Administration. *See* Fed. R.App. P. 43(c)(2).

** Appellant's counsel was unable to attend oral argument due to a medical emergency, and did not request a continuance. The court only heard argument from Appellee's counsel.

Victoria Blais Chhagan, for Plaintiff–Appellant.

Craig J. Casey, Office of the U.S. Attorney, Neil J. Evans, Office of the U.S. Attorney, Portland, OR, Lucille G. Meis, Leisa A. Wolf, Social Security Administration Office of the General Counsel, Seattle, WA, for Defendant–Appellee.

Before: O'SCANNLAIN, GRABER, and CALLAHAN, Circuit Judges.

MEMORANDUM ***

Michael R. Schow appeals the district court's decision upholding the Social Security Administration Commissioner's denial

*** This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

of Schow's application for Supplemental Security Income benefits. We reverse the district court and remand this matter for further proceedings. The parties are familiar with the factual and procedural history of this case, so we do not repeat it here.

The court reviews de novo the district court's order affirming the administrative law judge's ("ALJ") denial of social security benefits. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir.2007). The court will disturb the denial of benefits only if the decision "contains legal error or is not supported by substantial evidence." *Id.*

1. *The ALJ Correctly Rejected Five of Schow's Claimed Errors.*

■ We hold that five of Schow's objections are not persuasive. First, the ALJ provided clear and convincing reasons for rejecting Dr. Colistro's medical opinion regarding Schow's purported mental impairments. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.1996) (holding that an ALJ must provide clear and convincing reasons for rejecting an examining physician's uncontradicted medical opinion). The ALJ properly concluded that Dr. Colistro's opinion was "not supported by the treatment record," evidenced by facts including that Schow denied having any mental impairment; did not seek treatment for depression or mental health counseling; had only "mild limitations in activities of daily living, social functioning, or concentration, persistence or pace"; and had no extended decompensation episodes.

■ Second, we find that any error in evaluating Drs. Sibell and Siddiqui's diagnosis regarding myofascial dysfunction, and Dr. Krueger's assessment of chronic

pain syndrome, was harmless. *See Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir.2006) (stating that error is harmless if it is inconsequential to the ultimate determination). While the ALJ did not discuss these diagnoses by name, and thus did not provide clear and convincing reasons for rejecting them, *Lester*, 81 F.3d at 830, the ALJ actually considered the reported physical effects of these conditions in arriving at the disability determination.

■ Third, the record supports the ALJ's determination that Schow's myofascial dysfunction, depression, obsessive-compulsive tendencies, and somatic preoccupation were not severe. Schow failed to meet his burden of proving that these conditions significantly limited his physical or mental ability to do basic work activities. 20 C.F.R. §§ 416.912, 416.921; *Thomas v. Barnhart*, 278 F.3d 947, 954–55 (9th Cir. 2002). The ALJ's decision is reasonably based on his rejection of Dr. Colistro's medical opinion, Schow's repeated denials of depression, and his decision not to seek treatment. Moreover, Schow did not raise mental impairments in his initial benefits claim or his request for reconsideration. Additionally, Schow offered no evidence of myofascial dysfunction and chronic pain syndrome aside from the brief reports from Drs. Siddiqui, Sibell, and Krueger, which, in any event, the ALJ considered.

■ Fourth, the ALJ did not improperly reject the non-examining physician opinions from the Disability Determination Services consultants, Drs. Pritchard and McDonald. We find that the ALJ properly treated these non-examining physicians' opinions as opinion evidence and explained that they were entitled to "significant weight." 20 C.F.R. § 416.927(f)(2).[1]

---

1. Schow overstates Dr. McDonald's assessment that Schow "had limited ability to reach in all directions." The record reflects that

Dr. McDonald's opinion was limited to "[n]o constant overhead reaching," and the ALJ

■ Fifth, the ALJ adequately explained his reasons for giving "little weight" to the opinion of Thanh Nguyen, a nurse practitioner. An ALJ may consider opinions from sources other than "acceptable medical sources," like a nurse practitioner, 20 C.F.R. § 416.913(d)(1), and may discount those opinions by providing reasons that are "germane" to that source. *Cf. Bayliss v. Barnhart,* 427 F.3d 1211, 1218 (9th Cir.2005) (stating that inconsistency with medical evidence is a proper reason to discount an opinion); *Dodrill v. Shalala,* 12 F.3d 915, 918 (9th Cir.1993) (addressing the discounting of lay witness testimony). The ALJ stated that Nguyen was not an "acceptable medical source" and cited inconsistencies between her opinion and the medical record.[2]

### 2. The ALJ's Decision Must Be Reversed and Remanded Because of Three Remaining Errors.

We determine, however, that three of Schow's objections are well taken and require that the matter be reversed and remanded. First, the ALJ did not provide "clear and convincing" reasons for rejecting Schow's subjective pain and physical limitation testimony. Such reasons were required because Schow provided objective evidence of his degenerative disc disease and the ALJ made no finding of malingering. *See Robbins,* 466 F.3d at 883 (holding that "unless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each.") (citing *Smolen v. Chater,* 80 F.3d 1273, 1283–84 (9th Cir.1996)). Credibility findings must be "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas,* 278 F.3d at 958.

The dissent argues that our holding from *Robbins,* which requires that an ALJ provide clear and convincing reasons for an adverse credibility finding unless he makes a "finding of malingering based on affirmative evidence thereof," 466 F.3d at 883, is anomalous in that the weight of our cases hold that the mere existence of "affirmative evidence suggesting" malingering vitiates the clear and convincing standard of review. Although the dissent is correct in its assessment of our case law, we find that the record does not contain "affirmative evidence suggesting" that Schow was malingering, and, therefore, the ALJ was still required to support his credibility finding with clear and convincing reasons. The dissent points to "affirmative evidence" consisting of "[t]hree separate medical tests between March 2000 and April 2001" that showed "unremarkable" or normal results, and a fourth examination conducted by nurse practitioner Ramirez–Williams on March 21, 2000. Dissent at 654. Any reliance on Ramirez–Williams's findings is immediately suspect because the ALJ found that he was not an "acceptable" medical source and gave his opinions "little weight." It would be inconsistent to both credit Ramirez–Williams's intimation that Schow was a malingerer and reject Nguyen's express opinion that Schow was not a malingerer when the ALJ rejected both of these nurses' opinions for the same reasons.

---

adequately accounted for the other limitations set forth in the opinions.

2. Schow correctly argues that the ALJ misread Nguyen's opinion to reflect that Schow spent 20 hours a day lying down. However, this error was harmless because the ALJ ultimately adopted Nguyen's opinion that Schow could spend two hours of an eight-hour workday sitting and two hours standing or walking.

Likewise, the April 11, 2001 medical visit does not provide reliable support for the dissent's position because that visit was with nurse Nguyen, whose opinion was properly rejected by the ALJ and who expressly opined that Schow was not a malingerer. Further, despite the fact that x-rays taken during a March 3, 2000 visit with Dr. Berselli were "unremarkable," Dr. Berselli did find Schow's symptoms legitimate enough to order an MRI because Schow "may well have a cervical disc herniation." The final piece of affirmative evidence would seemingly come from a December 15, 2000 neurosurgical consultation, which lasted 15 minutes, indicating good range of motion of the neck and resulting in an MRI finding of a mild bone spur "but nothing really remarkable causing spinal cord compression or nerve root compression." The findings from this brief examination are mixed at best and, by themselves, do not constitute affirmative evidence of malingering.

■ The ALJ provided eight reasons for his adverse credibility finding, which we must analyze under the clear and convincing standard. At least five of these reasons do not support the credibility finding. The record does not support the ALJ's reasons regarding Schow's alleged failure to report numbness to his physicians and the closeness in time of Schow's incarceration and work stoppage. Likewise, the record does not support the existence of a treatment gap, and the ALJ improperly penalized Schow for his insurance company's refusal to cover therapy during that purported treatment gap. *See Orn*, 495 F.3d at 638 (inability to pay adequately explains a treatment gap). Further, the ALJ improperly questioned Schow's credibility based on his failure to provide objective evidence of his rest needs. *See Robbins*, 466 F.3d at 883 (ALJ may not reject testimony as incredible

"solely because it is not substantiated affirmatively by objective medical evidence"). Finally, the ALJ overstated Schow's ability to carry on daily activities. *See, e.g., Orn*, 495 F.3d at 639 (a claimant need not be "utterly incapacitated" to be disabled, and the mere fact that the claimant can perform certain daily activities does not detract from his credibility as to the purported disability overall). What remains are three reasons that might legitimately support the ALJ's credibility finding: (1) findings of normal muscle strength and range of motion in 2000 and early 2001, some of which the ALJ discounted; (2) some "inconsistencies on examination" noted by nurse practitioner Ramirez–Williams, albeit whose opinion the ALJ gave "little weight"; and (3) evidence of Schow's unreported earnings.

We do not use a mechanical formula for determining whether properly supported reasons for an adverse credibility determination are "clear and convincing." Instead, we must evaluate whether the determination is supported by substantial evidence, *i.e.*, relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Orn*, 495 F.3d at 630. Our only prior decision under relatively similar factual circumstances comes from *Batson v. Commissioner of Social Security Administration*, 359 F.3d 1190, 1197 (9th Cir.2004), where the court upheld a credibility finding because all but one of the ALJ's reasons were properly supported by the record. Here, the ALJ's reasons were not clear and convincing. The finding of unreported earnings is proper for consideration, but hardly compels the adverse credibility finding. Add to that the ALJ's reliance on the opinion of a nurse practitioner who the ALJ deemed to be an unacceptable medical source and whose opinion the ALJ gave "little weight," and the same result persists. Even with the addition of some

normal findings as to muscle strength and range of motion, the ALJ's conclusion is not supported by relevant evidence that a reasonable mind might find adequate. Moreover, given the number of unsubstantiated reasons for the adverse credibility determination, we must conclude that the ALJ arbitrarily discredited Schow's testimony.

■ The ALJ next erred in rejecting lay witness observations from Schow's mother, Cory Fleming, and friend, Lynn Sims. The ALJ erred by characterizing Fleming's and Sims's observations of Schow's pain and physical limitations as "based to a great extent on the claimant's self-report of symptoms." The record indicates that these witnesses' comments were based on their own observations, not self-reporting. *See Dodrill*, 12 F.3d at 918–19 (cautioning against characterization of witnesses' observations as mere repetition of the claimant's self-reporting). The ALJ compounded this error by relying heavily on the adverse credibility finding as to Schow's testimony. In doing so, he failed to provide reasons for rejecting Fleming's and Sims's observations that were "germane to each witness." *Id.* at 919. At oral argument, the Commissioner's counsel even conceded that the ALJ "bootstrapped" his rejection of Fleming's and Sims's observations with the credibility finding. Moreover, the erroneous credibility finding provided a problematic foundation for rejection of these observations.

■ The ALJ's error was not harmless because it is not clear from the record that the error was inconsequential to the ultimate disability determination. *Robbins*, 466 F.3d at 885. When fully credited, these witnesses' statements corroborate Schow's testimony and provide independent observations of his pain and physical limitations. This might have affected the formulation of Schow's residual functioning capacity and, as a result, the analysis at steps four and five.

■ Finally, by erroneously rejecting Schow's testimony and the lay witnesses' observations, the ALJ improperly omitted certain limitations from the residual functioning capacity that were supported by the record. *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir.1988) ("Hypothetical questions posed to the vocational expert must set out all the limitations and restrictions of the particular claimant. . . ."). As a result, the ALJ asked the vocational expert ("VE") a series of hypotheticals at step five that were based on an incomplete set of assumptions. The omissions rendered the questions posed, and her responses, legally deficient and of no evidentiary value. *Robbins*, 466 F.3d at 886 (hypotheticals to a VE based on an incomplete set of limitations are legally inadequate and the VE's responses have no evidentiary value). Therefore, the ALJ's determination that Schow was not disabled, which was based on the VE's deficient responses, was erroneous.

\* \* \*

Based on the foregoing, the ALJ's decision was not free of legal error and was not supported by substantial evidence. Therefore, we reverse the district court's decision affirming the ALJ with directions to remand to the ALJ for further proceedings.

REVERSED AND REMANDED.

O'SCANNLAIN, Circuit Judge, dissenting in part and concurring in the judgment:

While I concur in the judgment, I respectfully suggest that the court fails to accord proper deference to the Administrative Law Judge's ("ALJ") rejection of Schow's testimony concerning his subjective symptoms. The majority would apply

a "clear and convincing" standard of review of a credibility determination, but such standard is appropriate only where "there is no affirmative evidence suggesting [Schow] is malingering." *Smolen v. Chater,* 80 F.3d 1273, 1283–84 (9th Cir. 1996).

In *Robbins v. Social Security Administration,* 466 F.3d 880 (9th Cir.2006), we appeared to hold that the clear and convincing standard is required when an ALJ fails to conclude that a claimant is malingering. However, as the majority's disposition acknowledges, we cited *Smolen* for that proposition, which requires only the existence of "affirmative evidence suggesting" that a claimant is malingering. *Smolen,* 80 F.3d at 1283–84. Our other cases addressing the clear and convincing standard more clearly adopt the *Smolen* test. *See, e.g., Lingenfelter v. Astrue,* 504 F.3d 1028 (9th Cir.2007) ("[If] there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.' ") (quoting *Smolen,* 80 F.3d at 1281 and citing *Robbins,* 466 F.3d at 883); *Greger v. Barnhart,* 464 F.3d 968, 972 (9th Cir.2006); *Dodrill v. Shalala,* 12 F.3d 915 (9th Cir.1993) ("If there is medical evidence establishing an objective basis for some degree of pain and related symptoms, and no evidence affirmatively suggesting that claimant was malingering, the Secretary's reason for rejecting a claimant's testimony must be clear and convincing.") (internal quotation marks omitted).

Moreover, our precedent does not require an *express* finding of malingering. Indeed, *Smolen* noted both that the ALJ "made no finding" that the claimant was

malingering *and* that none "of the evidence suggest she was doing so." *Smolen,* 80 F.3d at 1284 n. 6. The latter statement, of course, would be superfluous if only an express finding of malingering was required. Here, the ALJ certainly implied that Schow was malingering. After indicating that on March 21, 2000, Schow "requested a note asking that he not have to work so many hours" due to his back pain while incarcerated, "[c]linical findings were inconsistent and [Schow] exhibited nonreproducible physical findings, interesting posturing that is not consistent with his known pathology ... [Schow] stated that he could not move his arm or neck but when asked to do so during the examination he was able to. His history was noted to be inconsistent about where it hurt and what made it hurt." The purpose of noting these observations clearly was to imply that Schow had lied about or exaggerated his back pain to avoid prison work-that is, to point out that Schow had malingered.

In any event, because the mere existence of "affirmative evidence suggesting" that a claimant is malingering vitiates the applicability of a clear and convincing standard of review, such standard is not required here. *Smolen,* 80 F.3d at 1283–84. Three separate medical tests between March 2000 and April 2001 showed either "unremarkable" results as to Schow's back condition or normal range of motion within Schow's neck and back; one doctor noted that Schow's pain began "for no apparent reason." [1] During a fourth examination by nurse-practitioner Ramirez–Williams on March 21, 2000, Schow initially complained of severe pain every time he was touched, but later in the examination, he was able to tolerate a moderate degree of pressure

---

1. The majority's disposition parses through these examinations to determine whether each individually suggests malingering. However, even if the each examination is separately suspect, the fact that they all revealed virtually the same results certainly suggests malingering when taken as a whole.

without any physical discomfort. Ramirez–Williams also concluded that "[t]here are no examination findings consistent with [a history of back pain or degenerative neck changes] at this time."[2] Such evidence affirmatively suggests that Schow was malingering, and on that ground alone I would affirm the ALJ's decision. That some of the ALJ's supporting arguments were in error is, of course, irrelevant; the foregoing grounds were both proper and sufficient.

Moreover, while I disagree with the majority's application of the clear and convincing standard of review, the evidence in the record is sufficiently compelling that I would affirm the ALJ's adverse credibility finding even under that standard. Here, the ALJ properly relied on the fact that Schow appears to have starkly lied to the ALJ about his work history. Schow represented to the ALJ that he had no earnings following 1997, but he in fact earned revenue during that period from a book that he previously had published. Moreover, when Schow saw Dr. Robert Norton on November 5, 1999, he indicated that he "works at several jobs," including as a construction worker; he came to Dr. Norton "with eight days of low back pain which has occurred while he was active at work." Schow made the same representation in forms that he submitted prior to his incarceration for an unrelated offense in January 2000. These evince that Schow had, in fact, been working after 1997 (indeed, that he had worked *several* jobs), despite his representation to the contrary. I respectfully disagree with the majority's conclusion that Schow's failure to report such work history "hardly compels" the ALJ's adverse credibility determination. *See Orn v. Astrue,* 495 F.3d 625, 630, 636 (9th Cir.2007) ("Factors that an ALJ may consider in weighing a claimant's credibility include ... inconsistencies in testimony or between testimony and conduct.").

With that said, I agree with the majority's conclusion that reversal is required in light of the ALJ's failure properly to discredit the lay witness testimony in this case, and I therefore concur in the judgment. While the ALJ was correct that the testimony could be discredited to the extent that it was founded on Schow's self-reporting, the testimony in large part was also based upon the witness' extensive personal observations of Schow. Accordingly, unless the ALJ properly cites alternative grounds for rejecting the lay testimony that are "germane to each witness," *Dodrill,* 12 F.3d at 919, the ALJ must provide a hypothetical to the vocational expert that accounts for their observations of Schow's limitations.

---

**2.** The majority's disposition concludes that the ALJ could not rely on such evidence because the ALJ also concluded that Ramirez–Williams was not an "acceptable medical source." Of course, the ALJ could reject his medical opinions while crediting his firsthand observations of Schow's behavior.