**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| MARIA BECERRA DE HERRERA, | No. 08-17554 |
| Plaintiff - Appellant, | D.C. No. 2:07-cv-01952-MHM |
| v. | |
| MICHAEL J. ASTRUE, Commissioner of Social Security Administration, | MEMORANDUM [*] |
| Defendant - Appellee. | |

Appeal from the United States District Court
for the District of Arizona
Mary H. Murguia, District Judge, Presiding

Argued and Submitted March 11, 2010
San Francisco, California

Before: REINHARDT and BYBEE, Circuit Judges, and GWIN, [**] District Judge.

Maria Becerra De Herrera appeals from the district court's order affirming

the Commissioner's decision to deny her social security disability benefits. She

argues that the ALJ made four errors in determining that she was not disabled. We

---

[*]    This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

[**]    The Honorable James S. Gwin, United States District Judge for the Northern District of Ohio, sitting by designation.

find De Herrera's arguments unpersuasive and we affirm the judgment of the district court.

De Herrera begins by arguing that the ALJ erred in rejecting the opinion of Nurse Practitioner David Glass. Under the regulations, nurse practitioners are considered "other sources," 20 C.F.R. § 404.1513(d)(1), not "acceptable medical sources," *id.* § 404.1513(a). As a result, the ALJ could reject Glass's opinion for "reasons that are germane to [Glass]."[1] *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993).

In rejecting Glass's testimony, the ALJ explained that Glass's opinion had been rejected by two reviewing physicians, that Glass's opinion ran contrary to the weight of the evidence, that Glass's opinion of complete disability was undermined by the fact that treatment seemed to improve De Herrera's condition, and that Glass's opinion was based on De Herrera's subjective complaints. Each of the ALJ's reasons is "germane to [Glass]," and is therefore sufficient to reject Glass's testimony.

---

[1] Social Security Ruling 06-03p is not to the contrary. Although the Ruling discusses the importance of other sources' testimony in establishing disability, nowhere does it purport to overrule the regulations' classification of nurse practitioners as "other sources."

Next, De Herrera argues that the ALJ erred in partially rejecting the opinion of Dr. Bencomo. Dr. Bencomo diagnosed De Herrera with pain disorder due to medical and psychological factors and an adjustment disorder with depressed mood secondary to pain. [ER 233.] He indicated that De Herrera had a good or fair ability to deal with most aspects of a work environment, but concluded that De Herrera had only a fair to poor ability to deal with work stresses. [ER 234.] The ALJ found "Dr. Bencomo's opinions persuasive, but [did] not assign[] controlling weight to [Dr. Bencomo's] opinion regarding the claimant's ability to deal with work stress because it appear[ed] that he based his opinion at least in part upon the claimant's subjective complaints of pain related to her physical impairments." [ER 10.]

The record indicates that Dr. Bencomo relied more heavily on De Herrera's complaints than "his own observations" in making his diagnosis. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1200 (9th Cir. 2008). Dr. Bencomo opined that it was De Herrera's pain, rather than her "depressed mood and anxiety," that was the "main source of [her] functional limitations." [ER 233.] And Dr. Bencomo's own report indicates that his understanding of De Herrera's level of pain was based primarily on her subjective complaints. [ER 232.] As a result, the ALJ was "free to disregard Dr. [Bencomo's] opinion," *Tonapetyan v. Halter*, 242 F.3d 1144, 1149

3

(9th Cir. 2001), so long as De Herrera's complaints with respect to her pain were "properly discounted as incredible," *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008); *see also Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995) ("[A]n opinion of disability premised to a large extent upon the claimant's own accounts of [her] symptoms and limitations may be disregarded, once those complaints have themselves been properly discounted."). As we explain below, the ALJ properly discounted De Herrera's testimony, and was therefore free to disregard Dr. Bencomo's opinion.

We think the ALJ adequately explained his reasons for rejecting De Herrera's testimony. First, the ALJ noted that De Herrera's testimony was not supported by objective medical evidence. We agree. Nothing in the medical record evidence supports De Herrera's testimony that at the time of the hearing she could sit and stand for only one half-hour at a time. Second, the record supports the ALJ's statement that this testimony was contradicted by De Herrera's earlier report to a doctor that she could stand for four hours. Third, the ALJ observed that De Herrera's condition improved with treatment, and favorable responses to treatment can undermine a claimant's complaints of debilitating pain. *See Tommasetti*, 533 F.3d at 1040. Finally, the ALJ relied "in significant part" on her husband's reports regarding De Herrera's daily activities. The husband said that

4

De Herrera continued to get her daughter ready for school, prepare simple meals every third day, drive for a short time, shop, sew, attend church every other week, and spend time with other people. As the ALJ concluded, De Herrera's activities significantly undercut her claim that she is completely disabled.

Lastly, De Herrera argues that the ALJ erred in determining De Herrera's residual functional capacity. The ALJ's determination was based on an examining doctor's findings, with additional limitations. Even if not every limitation the ALJ identified was directly supported by the record, the addition of more limitations than the evidence warranted was harmless error. *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) ("We have . . . affirmed under the rubric of harmless error where the mistake was nonprejudicial to the claimant . . . .").

AFFIRMED.

5

De Herrera v. Astrue 08-17554

Judge Reinhardt, dissenting:

The Social Security Disability Act provides a safety net for those in our society unfortunate enough to be afflicted by disabilities, whether mental, physical or both, that prevent them from working. *See* 42 U.S.C. §423(d)(1)(a). Because the ALJ's reasons for denying disability benefits to De Herrera were not supported by the evidence before him, I dissent.

Dr. Bencomo's uncontroverted testimony was that De Herrera has a fair to poor ability to deal with work stress. A vocational expert testified that there are no jobs available for a person with such a condition. Accordingly, had the ALJ credited Dr. Bencomo's testimony, he would have been compelled to find De Herrera disabled within the meaning of the statute. The ALJ's entire reasoning for disregarding Dr. Bencomo's testimony as to this condition was that Dr. Bencomo relied on De Herrera's subjective complaints of pain, which the ALJ viewed as not credible. Because De Herrera provided objective evidence of an underlying impairment, and there was no affirmative evidence of malingering, the ALJ was required to provide "specific, clear, and convincing reasons" for discrediting her testimony about the severity of her pain. *See Tomasetti v. Astrue*, 533 F.3d 1035, 1039 (2008).

The reasons offered by the ALJ and embraced by the majority were far from clear and convincing. Perhaps the worst of them is the assertion that information provided by De Herrara's husband about her daily life undercut her claims of pain and disability. The ALJ based his conclusions as to her lack of disability and concomitant lack of credibility "in significant part" on the report provided by her husband. Yet there is nothing in the husband's report to contradict her claim that she is too disabled to work, and much to support it. I simply cannot see how the fact that every third day she is able to muster herself to put a frozen meal in the microwave would indicate that she is able to work a regular job. Nor do I see how it is contrary to her testimony: she told the ALJ she could stand for half an hour at a time, which is perhaps twenty-five minutes more than would be necessary to prepare the meals that her husband describes. I also cannot fathom how the fact that people visit De Herrera in her home, including one friend who comes over to do some of the housework that De Herrera is unable to do, demonstrates that she is able to function at a higher level or that she has less pain than she claimed. Social isolation is not a requirement for a disability finding.

Similarly, her claims of disability are hardly undercut by her husband's reports that once or twice a week she is able to take herself around a grocery store in a motorized chair, that she drives short distances no more than a couple times a

week, or that once every two weeks she goes to church. Particularly bizarre are the ALJ's assertions that her sewing or watching movies "every now and then" demonstrated a lack of disability. Is it necessary to begin warning Social Security claimants that use of a DVD player or a needle and thread, even while supine, may disqualify them for benefits? As for the claim that she continued to get her daughter ready for school, her husband did not report that she was ever able to accomplish all the tasks necessary to send their daughter to school, but only that she tried, and that such effort might be all she was able to accomplish in a day: "She does very little chores around the house, mostly try to get things done for our girl to go to school. Rest of the day she sits or lies down because of the pain."

Neither the ALJ nor the majority takes stock of other important information in the husband's report, which corroborate her claims of disability: because of her pain, de Herrera is often unable to get out of bed before 11 a.m.; she spends most of the day sitting or lying down; she cannot put on pants, shave her legs or tie her shoes; and she can walk no more than 5 to 10 minutes before needing a rest of 10 to 20 minutes. Moreover, she is "in a constant state of depression because she cannot be as she used to be, she cannot be the mother or wife she was before." In short, her husband's report describes De Herrera as afflicted by physical pain and psychological difficulties arising out of that pain. There is nothing in it to suggest

that she is in less pain or retains more functionality than she claimed, or that she would be able to work anything close to regular hours in a regular job.

The rest of the ALJ's reasons are no more convincing. The first, that the objective medical evidence, while sufficient to establish some level of pain, did not support her reports as to the severity of her pain, "is exactly the type [of justification of an adverse credibility finding that] we have previously recognized the regulations prohibit." *Robbins v. Social Sec. Admin.*, 466 F.3d 880, 884 (9th Cir. 2006); *see also* SSR 96-7p, 1996 WL 374186, at *1. The second, that she previously reported to a doctor that she could stand for four hours, drew on a statement that she made three years prior to the hearing. During the three years between that statement and her hearing testimony, De Herrera did not work, rarely left the house, and spent most of her days sitting and lying down. It is not a surprise–much less an inconsistency to support a finding that De Herrera was not credible–that after three years of near inactivity, her physical abilities had diminished. *See* SSR 96-7p, 1996 WL 374186, at *5 ("[T]he lack of consistency between an individual's statements and other statements that he or she has made at other times does not necessarily mean that the individual's statements are not credible. Symptoms may vary in their intensity, persistence, and functional effects, or may worsen or improve with time, and this may explain why the individual does

not always allege the same intensity, persistence, or functional effects of his or her symptoms.")

Finally, the majority and the ALJ assert that De Herrera's condition improved with treatment, and that a favorable response to treatment can undermine a claimant's complaints of debilitating pain. As a preliminary matter, De Herrera made no statement that suggests that the treatment improved her condition to the point that she could work: she stated only that epidurals she received three years before the hearing "improved" her sciatica and that Vicodin "helps" her back pain. Moreover, pain can be "improved" and "helped" without bringing an applicant anywhere close to being able to function. Further, there is no rule that favorable response to *any* treatment undermines a claim of debilitating pain. The case law discusses only favorable responses to conservative, noninvasive treatments that themselves do not preclude work, such as use of a back corset, physical therapy and electromagnetic stimulation. *See Tommasetti*, 533 F.3d at 1040. The rule clearly has no application to powerful narcotics like Vicodin, which De Herrera described, quite plausibly, as making her "dumb" and interfering with her ability to make it to doctor's appointments. [ER 232] A treatment that incapacitates as it eases pain cannot be considered evidence that the underlying pain is not debilitating.

Refusing disability benefits to qualified persons for reasons that are not clear and convincing, let alone without any merit, defeats the will of Congress and damages those individuals least able to absorb the occasional errors made by our systems of adjudication. The majority opinion affirms an administrative decision that appears to do exactly that. Accordingly, I dissent.