**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| GREGORY LEE MITCHELL, | No. 13-35059 |
| Plaintiff - Appellant, | D.C. No. 2:11-cv-01941-RAJ |
| v. | |
| CAROLYN W. COLVIN, Commissioner of Social Security Administration, | MEMORANDUM[*] |
| Defendant - Appellee. | |

Appeal from the United States District Court
for the Western District of Washington
Richard A. Jones, District Judge, Presiding

Argued  May 15, 2014 Submitted August 7, 2014
Seattle, Washington

Before: O'SCANNLAIN, BERZON, and TALLMAN, Circuit Judges.

Gregory Mitchell seeks judicial review of the denial of his claim for

disability benefits.  We have jurisdiction pursuant to 28 U.S.C. § 1291, and we

affirm.

---

[*]    This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

We review *de novo* the district court's order affirming the Administrative Law Judge's ("ALJ's") denial of Social Security Disability Insurance and Supplemental Security Income disability benefits, and we must independently determine whether the ALJ's decision is free from legal error and supported by substantial evidence. *See Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996). "If the evidence can support either affirming or reversing the ALJ's conclusion, we may not substitute our judgment for that of the ALJ." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006).

First, Mitchell contends that the ALJ erred by giving little weight to the second assessment of treating physician Dr. Park, which was prepared in January 2010 and suggested that Mitchell was totally disabled. The ALJ instead gave great weight to a January 2009 report prepared by Dr. Park concluding that Mitchell could perform sedentary work. He also gave: (1) great weight to the opinion of consulting physician Dr. Merrill, who concluded that Mitchell could perform sedentary work with postural and environmental limitations; (2) limited weight to the opinions of treating physician Dr. Pollack and consulting physician Dr. Bernardez-Fu, who concluded that Mitchell could perform at least the full range of sedentary work; and (3) rejected the opinions of consulting physician Dr. Attaman

and P.A. Wade because Dr. Attaman only saw Mitchell one time and P.A. Wade is not an "acceptable medical source under the regulations."

"Because treating physicians are employed to cure and thus have a greater opportunity to know and observe the patient as an individual, their opinions are given greater weight than the opinions of other physicians." *Smolen*, 80 F.3d at 1285. But if a treating physician's opinion is controverted, an ALJ can reject it by providing specific, legitimate reasons for doing so that are based on substantial evidence in the record. *Id.*

The many experts who weighed in on Mitchell's abilities did not agree. And, the ALJ sufficiently detailed his reasons for rejecting Dr. Park's second opinion. The ALJ properly found that the second opinion was "inconsistent with the objective medical evidence of record, demonstrating improvement in several of the claimant's impairments in 2009." Specifically, the ALJ cited to exhibits showing that, throughout 2009, Mitchell's blood pressure was improving, his sleep apnea was improving, he denied chest pain and related symptoms, and his

3

sarcoidosis was stable.[1]  Based on this evidence, it was "far from clear that

[Mitchell's] condition was progressively deteriorating."  *See Young v. Heckler*, 803

F.2d 963, 968 (9th Cir. 1986).  The ALJ thus properly relied on Dr. Park's first

opinion and the opinion of consulting physician Dr. Merrill.

Second, Mitchell contends that the ALJ improperly discredited his symptom

testimony.  When objective medical evidence establishes that the claimant suffers

from an impairment that could reasonably produce the symptoms complained of,

"an adverse credibility finding must be based on clear and convincing reasons"

unless there is affirmative evidence of malingering.  *Carmickle v. Comm'r, Soc.*

*Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008) (internal quotation marks and

quoting source omitted).  Here, the ALJ provided clear and convincing reasons to

support his conclusion that the "intensity, persistence and limiting effects" of

Mitchell's symptom testimony did not comport with the record.  *See Stubbs-*

*Danielson v. Astrue*, 539 F.3d 1169, 1175 (9th Cir. 2008) (quoting the ALJ

decision in *Stubbs-Danielson*).  The ALJ also noted that Mitchell's testimony was

---

[1] The dissent, which objects to the ALJ's rejection of Mitchell's subjective symptom testimony, states that Mitchell's sarcoidosis was "diagnosed" as progressive.  But we read the record differently; the only use of the word "progressive" in Mitchell's medical record appears prior to his official sarcoidosis diagnosis, when the doctor was merely prognosticating about the potential causes of Mitchell's symptoms.  And, even progressive diseases can be stabilized by treatment.

inconsistent with the medical evidence showing improvement and with Mitchell's reported daily activities, which include caring for his children and himself as well as driving, shopping, and riding a bicycle.

The ALJ additionally relied on the fact that Mitchell has not been compliant with his medical regimen. *See Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012). Although some of this non-compliance is explained by insurance issues, the balance of it, including Mitchell's non-compliance with his diet and his failure to take hypertension medications as directed, support the adverse credibility finding.[2] The ALJ also noted "multiple inconsistent statements" between Mitchell's testimony and his function report. And, although another ALJ may have excused these inconsistencies, they fairly contributed to the ALJ's ultimate adverse credibility finding.

---

[2] The dissent characterizes Mitchell's repeated instances of non-compliance as explainable "slip-ups." But we read the record, which is peppered with references to Mitchell's failure to follow medical regimens, differently. As discussed in the dissent, some instances of Mitchell's non-compliance were explained by administrative or comfort issues. But several were not. The treatment notes indicate that Mitchell's hypertension difficulties were exacerbated because he was "not taking medication as directed." They also show that, beyond a failure to follow his recommended diet, Mitchell made his health worse by "increas[ing] his intake of calories" and "gain[ing] some weight," which made it "more difficult of [sic] him to ambulate and cause[d] more knee pain."

5

Third, Mitchell contends that the ALJ erred in finding that "a significant number of jobs exists that [the] claimant can perform, in light of [his residual functioning capacity], age, education, and work history." This argument is waived because Mitchell did not raise it before the district court. *Edlund v. Massanari*, 253 F.3d 1152, 1158 n.7 (9th Cir. 2001). But the argument would not persuade us even if it could be considered.

The Commissioner concedes that the ALJ erred in finding Mitchell capable of performing three jobs when two of them were semi-skilled and the ALJ did not make the necessary findings as to Mitchell's ability to perform them. But the error was harmless because the semiconductor bonding job, which comports with Mitchell's limitations, offers 1,300 regional positions and 41,000 national positions. Although we have "never set out a bright-line rule for what constitutes a 'significant number' of jobs" to support a finding that the claimant is not disabled, *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012), other cases have concluded that fewer than 2,000 regional jobs is enough, *see Thomas v. Barnhart*, 278 F.3d 947, 960 (9th Cir. 2002) (1,300 jobs in Oregon was enough); *Barker v. Sec'y of Health & Human Servs.*, 882 F.2d 1474, 1479 (9th Cir. 1989) (1,266 regional jobs was enough).

**AFFIRMED.**

6

*Mitchell v. Colvin*, No. 13-35059
BERZON, Circuit Judge, Dissenting:

Despite evidence showing that Mitchell's impairments changed over time, the ALJ discredited Mitchell's testimony as to the severity of his limitations on the basis of a disability report that was two and a half years old. The ALJ should have considered whether Mitchell's symptoms had worsened over time before disregarding his testimony. As the adverse credibility determination thus was fundamentally flawed, I would reverse for that reason alone. Compounding my concern is the fact that a different ALJ found Mitchell's testimony credible and awarded him benefits a mere twenty days after Mitchell was denied benefits in this case. Accordingly, I respectfully dissent.

**1.** Social Security Administration rulings recognize that "[s]ymptoms may vary in their intensity, persistence, and functional effects, or may worsen or improve with time," and that "this may explain why the individual does not always allege the same intensity, persistence, or functional effects of his or her symptoms." SSR 96–7p, 1996 WL 374186, at *5 (July 2, 1996). Rather than assume that an applicant whose assessments of his limitations worsen over time is not credible, "adjudicator[s] . . . [are] to review the case record to determine whether there are any explanations for any variations in the individual's statements about symptoms and their effects." *Id.*

The ALJ conducted no such review before dismissing Mitchell's testimony on the basis of perceived inconsistencies with a function report Mitchell completed several years before the ALJ hearing. The ALJ's failure to do so is particularly troubling because Mitchell's treating pulmonologist diagnosed Mitchell's sarcoidosis as "progressive." In light of the evidence that Mitchell's ailments were not fixed in time, checkmarks in a years old disability report are not "clear and convincing" evidence for finding Mitchell not credible. *See Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2008).

**2.** Examination of the record demonstrates that aside from the different time period covered, some of the specific testimony that the ALJ identified as inconsistent with Mitchell's previous report was not. For example, the ALJ found it inconsistent that Mitchell testified to only being able to lift ten pounds when he previously stated he could lift twenty. However, in his 2007 disability report, Mitchell stated that he can lift twenty pounds "*occasionally*" and *ten* pounds "frequently"; before the ALJ, he testified that he could "probably move about ten pounds" "without feeling . . . the exertion with the pressure on [his] chest." The latter statement is not inconsistent with earlier checking a box to indicate that he *could* lift twenty pounds on *occasion*. Moreover, the same examiners to which the ALJ afforded "great weight" also stated that Mitchell should not lift more than ten

2

pounds, even occasionally.

**3.** Furthermore, the activities Mitchell reported in 2007 are not inconsistent with a disability finding. The ALJ found it inconsistent for Mitchell to fill out a disability report indicating he: "leaves his house alone; rides a bicycle; drives every other day up to eight miles; washes dishes and vacuums from a seated position; grocery shops every two to three weeks; cares for his children; and is able to dress, bathe, care for his hair and teeth, shave, feed himself, and use the toilet." Most of the activities listed are "so undemanding that they cannot be said to bear a meaningful relationship to the activities of the workplace." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). Therefore they were not a proper basis for discrediting Mitchell. *Id.*

The outlier is Mitchell's placing a checkmark in a box indicating he rides a bicycle. However, contemporaneous treatment notes reflect that Mitchell "can ride the bike to the end of [the] block and back before getting shortness of breath." In the context of this medical evidence, Mitchell's statement that he rides a bicycle is not inconsistent with the evidence that he suffers from shortness of breath and is impaired. Discrediting Mitchell on the basis of this limited activity contravenes the principle that "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations." *Reddick v. Chater*, 157 F.3d 715,

3

722 (9th Cir. 1998).

**4.**     The final ground for discrediting Mitchell was evidence that Mitchell has not complied with his medication and diet, "suggest[ing] that his symptoms may not have been as limiting as the claimant has alleged in connection with this application." The ALJ reasoned that if Mitchell were suffering from his impairments as much as he insists, he would take his medication and would be more strict with his diet.

But disability adjudicators are "not [to] draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain . . . failure to seek medical treatment." SSR 96–7p at *7. Agency rules instead advise that "to determine whether there are good reasons the individual does not . . . pursue treatment in a consistent manner," disability adjudicators "may need to recontact the individual or question the individual at the administrative proceeding." *Id.*

Here, the ALJ chose not to ask Mitchell about perceived inconsistencies in following recommended treatment yet relied on those lapses to discredit him. Moreover, the record is replete with explanations for Mitchell's slip-ups. For

4

example, the ALJ cites to a treatment note from the Heartbeat Institute stating Mitchell "has been off Coreg for 1 week." But that same note explains that the stoppage was due to "insurance problems, now corrected." The ALJ also cites to a treatment note that reflects that Mitchell "has been off [Continuous Positive Airway Pressure] CPAP" for three days. But earlier that same month, Mitchell reported that he was finding it "difficult to wear" the CPAP and was "not getting restful sleep" with it.

Finally, the ALJ's finding that Mitchell's noncompliance with the recommended diet supports a no-credibility finding conflicts with the law of this circuit. *Orn* holds that failure to follow prescribed treatment is not equally probative of credibility in all cases. 495 F.3d at 637–38. "In the case of a complaint of pain, such failure may be probative of credibility, because a person's normal reaction is to seek relief from pain, and because modern medicine is often successful in providing some relief." *Id.* at 638. "But in the case of impairments where the stimulus to seek relief is less pronounced, and where medical treatment is very unlikely to be successful, the approach to credibility makes little sense." *Id.*

So, too, here. Unlike taking a pill to relieve pain, adherence to a low calorie diet does not offer immediate or complete relief from the problems of obesity and high blood pressure. For that reason, Mitchell's (sporadic) noncompliance with his

5

diet is not a clear and convincing reason for discounting his credibility.

What *is* clear from the overall record is that Mitchell sought treatment from his providers on a regular basis: He sought care from the Heartbeat Institute, for example, twenty-eight times between 2006 and 2009. As the overall record shows that Mitchell has consistently sought treatment for his various conditions, Mitchell's treatment history supports, rather than undermines, his testimony about the intensity and severity of his symptoms.

**5.** Calling the ALJ's credibility assessment further into question is the fact that a different ALJ found Mitchell disabled based on the same basic medical complaints twenty days after the ALJ's denial. The "initial denial" of Mitchell's application and this "subsequent award [are not] easily reconcilable on the record before" us. *Luna v. Astrue*, 623 F.3d 1032, 1035 (9th Cir. 2010). As there is a "reasonable probability that the subsequent grant of benefits was based on new evidence not considered by the ALJ as part of the first application," at the very least, "further consideration of the factual issues is appropriate to determine whether the outcome of the first application should be different," and particularly, whether the ALJ erred in finding Mitchell's testimony not credible. *Id.*

For the foregoing reasons, I would not affirm, but would remand the denial of Mitchell's claim to the Social Security Administration.