**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| KEVIN LOADER, | No. 16-35229 |
| Plaintiff-Appellant, | D.C. No. 6:15-cv-00038-JTJ |
| v. | |
| NANCY A. BERRYHILL, Acting Commissioner Social Security, | MEMORANDUM[*] |
| Defendant-Appellee. | |

Appeal from the United States District Court
for the District of Montana
John T. Johnston, Magistrate Judge, Presiding

Argued and Submitted December 6, 2017
Seattle, Washington

Before: O'SCANNLAIN, TALLMAN, and WATFORD, Circuit Judges.

Kevin Loader appeals the district court's order affirming the Social Security

Administration's denial of his application for disability benefits. Because the facts

are known to the parties, we repeat them only as necessary to explain our decision.

I

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

The administrative law judge (ALJ) did not err in finding that Loader's depression was a medically determinable but not "severe" impairment at Step 2 of the five-step sequential procedure. *See generally* 20 C.F.R. §§ 404.1520, 416.920. But even if that determination were made in error, it would be harmless, because Loader prevailed at Step 2—and his case proceeded to the remaining steps—on the basis of other severe impairments. Once past Step 2, the ALJ was required to consider Loader's depression as a medically determinable impairment, even if it was not found to be severe. 20 C.F.R. §§ 404.1545(a)(2); 416.945(a)(2). Thus, once Loader prevailed at Step 2, it made no difference for the ALJ's ensuing analysis whether his medically determinable depression was previously considered "severe." *See Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017).

II

The ALJ did err, however, by failing to consider the limitations imposed by Loader's depression when assessing his residual functional capacity (RFC), and thereafter when examining the vocational expert. As stated, at Step 2, the ALJ found Loader's depression to be a "medically determinable mental impairment." The ALJ was therefore required to consider such impairment in assessing Loader's RFC. 20 C.F.R. §§ 404.1545(a)(2); 416.945(a)(2); *Buck*, 869 F.3d at 1049. The ALJ failed, however, even to mention Loader's depression or mental impairments

2

when assessing his RFC, and the RFC itself says nothing at all about such impairments or their effects. Likewise, the ALJ failed to mention any such impairment in the hypothetical questions it posed to the vocational expert.

We cannot conclude that the ALJ's failure to consider Loader's mental impairments when assessing his RFC or when questioning the vocational expert was harmless. *Cf. Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006) (error is harmless if it is "clear from the record that [the] error was inconsequential to the ultimate nondisability determination" (internal quotation marks omitted)). Indeed, at the hearing before the ALJ on Loader's first application for disability benefits, the vocational expert testified that the addition of "marked limitations in the ability to persist, pace, or concentrate throughout an eight-hour day" to Loader's physical impairments may have changed the expert's opinion as to the work that Loader could perform. Such limitations are similar to the mild mental limitations that the ALJ found to be associated with Loader's depression, and thus express consideration of such impairments may have impacted the ALJ's ultimate disability determination.

### III

The ALJ did not err in assessing Loader's physical limitations in the RFC and or in his examination of the vocational expert. The ALJ's assessment of

3

Loader's physical limitations is supported by substantial evidence in the record, including both medical evidence and evidence related to Loader's activities.

A

The ALJ's adverse assessment of Loader's credibility was supported by "specific, clear and convincing reasons." *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017) (internal quotation marks omitted). Indeed, the ALJ cited numerous pieces of evidence in the record that clearly contradicted Loader's testimony as to the extent of his impairments, including objective medical evidence such as diagnostic test results, evidence that Loader experienced some relief from conservative and routine care, and evidence that Loader participated in various activities that contradicted his supposed physical limitations.[1] Such contradictions are sufficient to support the ALJ's credibility determination. *See generally Ghanim v. Colvin*, 763 F.3d 1154, 1163–64 (9th Cir. 2014) (discussing ALJ credibility determinations).

---

[1] Loader's complaint that some of the events cited by the ALJ occurred before the alleged onset date of his disability is misplaced. As the ALJ explained, Loader's alleged onset date had "no clinical significance," but was instead simply the day after Loader's prior application for benefits based on the exact same alleged disabilities was denied. It was thus Loader's burden to show that his condition had materially worsened since his previous claim was denied. *See Fair v. Bowen*, 885 F.2d 597, 600 (9th Cir. 1989). Because evidence such as diagnostic images suggested that Loader's condition had *not* materially worsened, Loader's prior activities remained relevant to illustrating the extent of his impairments.

4

B

The ALJ likewise provided specific, clear, and convincing reasons to reject Dr. Meyer's assessment of Loader's physical limitations. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). Once again, those reasons included several contradictions between Dr. Meyer's opinion as to Loader's physical capabilities and physical activities that Loader actually performed.

C

Although the ALJ failed explicitly to consider and provide germane reasons for rejecting evidence from every non-medical source, such evidence was merely corroborative of the impairments described by Loader and Dr. Meyer. Because the ALJ's well-supported reasons for rejecting Loader's and Dr. Meyer's testimony apply with equal force to the testimony of the non-medical witnesses, the ALJ's failure explicitly to consider the evidence from every such witness was harmless. *See Molina v. Astrue*, 674 F.3d 1104, 1117–22 (9th Cir. 2012).

IV

For the foregoing reasons, the decision of the district court is **AFFIRMED** in part, **REVERSED** in part, and this case is **REMANDED** to the district court with instructions to remand to the Commissioner for further proceedings. On remand, the ALJ is directed to re-assess Loader's RFC, including all of Loader's

5

relevant medically determinable impairments, both physical and mental, and to re-assess its Steps 4 and 5 conclusions in light of the complete RFC.

The parties shall bear their own costs on appeal.

*Loader v. Berryhill*, No. 16-35229

WATFORD, Circuit Judge, concurring in part and dissenting in part:

I would reverse across the board. I think the ALJ erred in determining that Mr. Loader's testimony was not credible, and in giving no weight to Dr. Meyer's April 21, 2014, opinion statement. The objective medical evidence supports, rather than contradicts, Mr. Loader's complaints about the extent of his back pain; indeed, the medical evidence confirms that his back pain "persists and is fairly debilitating." Dr. Meyer's opinion statement is fully consistent with his treatment notes and the record as a whole. As a result, the ALJ had no basis for disregarding the views of Dr. Meyer, who was not only Mr. Loader's treating physician but also the only medical doctor whose opinions are included in the record.