**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

LEONARD R. GREGER,
　　　　　　　*Plaintiff-Appellant,*

v.

JO ANNE B. BARNHART,
Commissioner of Social Security,
　　　　　　　*Defendant-Appellee.*

No. 04-35891

D.C. No.
CV-04-0023-MWL

OPINION

Appeal from the United States District Court
for the Eastern District of Washington
Michael W. Leavitt, Magistrate Judge, Presiding

Argued and Submitted
June 6, 2006—Seattle, Washington

Filed September 20, 2006

Before: Warren J. Ferguson and Consuelo M. Callahan,
Circuit Judges, and Susan R. Bolton,* District Judge.

Opinion by Judge Bolton;
Dissent by Judge Ferguson

---

*The Honorable Susan R. Bolton, United States District Judge for the
District of Arizona, sitting by designation.

11749

## COUNSEL

Plaintiff-appellant was represented by Rebecca M. Coufal of Spokane, Washington.

Defendant-appellee was represented by Robert McCallum, Assistant Attorney General, James A. McDevitt, United States Attorney, Pamela J. Derusha, Assistant United States Attorney, Lucille Gonzales Meis, Regional Chief Counsel, and Franco L. Becia, Assistant Regional Counsel Social Security Administration, of Seattle, Washington.

## OPINION

BOLTON, District Judge:

Leonard R. Greger appeals the district court's order affirming the Commissioner of Social Security's ("Commissioner") denial of social security disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-33. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

## FACTS AND PROCEDURAL HISTORY

Greger applied for social security disability insurance benefits on January 30, 2001. He alleged that he became disabled

on June 25, 1998 due to triple bypass surgery, high blood pressure, a defective aorta, fibromyalgia, bad knees, and stomach problems. Greger's disability insurance lapsed on December 31, 1998, and so he must establish that he was disabled and unable to work from the alleged onset date, June 25, 1998, to December 31, 1998 (the "relevant period").

Greger was 49 years old, with a ninth-grade education, when his insured status expired. At his hearing on October 8, 2002, Greger testified that he worked as a truck driver until 1993 and was self-employed after that, doing miscellaneous carpentry-type jobs until shortly before he had open heart surgery in June 1998. Greger also had surgery in July 1998 to remove a perianal abscess with followup surgery in November 1998. Greger testified that, during the relevant period, he experienced pain when sitting or standing for more than 30 minutes at a time, or walking more than half a block, shortness of breath with activity such as walking, and fatigue and shortness of breath caused by his heart medication, Atenolol. He said that he had suffered from carpal tunnel syndrome for five years. He also testified that the Veterans Administration ("VA") diagnosed him with post traumatic stress disorder ("PTSD") in August 1998, with a disability rating of 30%.[1] Also, stomach surgery in 1976 left him with "dumping syndrome," a difficulty in controlling one's bowels.

The administrative law judge ("ALJ") went through the five-step sequential evaluation process as required by 20 C.F.R. § 404.1520.[2] At step one, the ALJ determined that

---

[1] A May 1, 2000, VA compensation and pension exam report recognized that Greger was "currently 30% service-connected for PTSD and 20% service-connected for postoperative stomach injury." The May 2000 report referenced Greger's previous compensation and pension exam, conducted in September of 1998, although the earlier report is not in the record.

[2] The Ninth Circuit outlined this five-step process in *Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995):

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

Greger was not performing substantial gainful activity. At steps two and three, the ALJ found that Greger suffered from severe cardiac, gastrointestinal and musculoskeletal impairments, as well as gout and hypertension, but that his condition did not meet or equal a listed impairment. The ALJ also found that Greger's PTSD and other psychological problems did not meet the criteria for a severe mental impairment during the relevant period. At steps four and five, the ALJ found that Greger's problems prevented him from doing his past relevant work as a truck driver and carpenter, but that he retained the residual functional capacity ("RFC") during the relevant period to perform other work at a light level of exertion. Accordingly, the ALJ found that Greger was not disabled.

Greger appealed the ALJ's decision to the district court, and the magistrate judge entered judgment for the Commissioner. On appeal to this court, Greger advances the same issues he raised in the court below: that substantial evidence does not support the ALJ's findings that Greger and his former girlfriend, Lois Shields, are not credible and that the ALJ's RFC analysis was erroneous because it did not include all of Greger's claimed limitations. Greger also raises two new issues that he did not raise in the district court: that the ALJ erred (1) by concluding that his psychological problems

---

Step two: Does the claimant have a 'severe' impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.

Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.

Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.

Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

were not severe when the VA had rated him with a 30% mental disability; and (2) by not ordering a consultative psychological exam in order to fully develop the record.

## STANDARD OF REVIEW

We review de novo a district court's order upholding a denial of social security disability benefits. *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). This review is limited, however, and "we may set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on legal error." *Id.* (citation omitted).

## DISCUSSION

### I.

Greger argues that the ALJ erred in finding him not credible and rejecting his testimony regarding his limitations.

To reject Greger's subjective complaints, the ALJ "must provide 'specific, cogent reasons for the disbelief.' " *Lester*, 81 F.3d at 834 (quoting *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990)). In the absence of evidence that Greger is malingering, the ALJ's reasons for rejecting his testimony "must be clear and convincing." *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989). When an ALJ "finds that a claimant's testimony relating to the intensity of his pain and other limitations is unreliable, the ALJ must make a credibility determination citing the reasons why the testimony is unpersuasive." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999) (citing *Bunnell v. Sullivan*, 947 F.2d 341 (9th Cir. 1991)). In making a credibility determination, the ALJ "must specifically identify what testimony is credible and what testimony undermines the claimant's complaints[.] In this regard, questions of credibility and resolutions of conflicts in the testimony are functions solely of the Secretary." *Id.* (citations omitted).

**[1]** The ALJ provided clear and convincing reasons for rejecting Greger's testimony and gave a detailed written opinion summarizing the specific statements by Greger that were not credible and the evidence that undermined Greger's complaints. During the relevant six-month period and into 1999, Greger failed to report any shortness of breath or chest pain; there was no evidence that Greger participated in a planned cardiac rehabilitation program; and he never reported problems related to carpal tunnel syndrome. Moreover, Greger told the VA in 2000 that he did carpentry work "under the table" through 1999, well after his date last insured. The ALJ noted evidence that after his surgery Greger was "active with yard work, work around the house, and that he was able to continue his past work activities as a contractor."

## II.

Likewise, the ALJ did not find Shields credible and so disregarded her affidavit which attested to Greger's fatigue and shortness of breath following his surgery and to pain and numbness in his hands.

**[2]** While an ALJ must take into account lay witness testimony about a claimant's symptoms, the ALJ may discount that testimony by providing "reasons that are germane to each witness." *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993). The ALJ found that Shields' "statements are inconsistent with [Greger's] presentation to treating physicians during the period at issue, and with [Greger's] failure to participate in cardiac rehabilitation." The ALJ also considered Shields' "close relationship" with Greger, and that she was possibly "influenced by her desire to help [him]." The ALJ's reasons for doubting Shields' credibility are germane to her; accordingly, it was not error for the ALJ to disregard her testimony.

Greger also argues that this matter must be remanded so that the ALJ can examine Shields and properly assess her credibility. At the hearing, however, Greger's attorney agreed

to have Ms. Shields submit an affidavit in lieu of testifying due to the lack of time that day. Accordingly, there is no error.

## III.

Greger argues that the ALJ erred in assessing his RFC because the hypothetical posed to the vocational expert at Greger's hearing did not specifically include Greger's claim that the Atenolol produced the side effect of fatigue. The ALJ, though, "is free to accept or reject restrictions in a hypothetical question that are not supported by substantial evidence." *Osenbrock v. Apfel*, 240 F.3d 1157, 1164-65 (9th Cir. 2001). Because Greger did not report any fatigue to his doctors during the relevant period, the ALJ properly limited the hypothetical to the medical assumptions supported by substantial evidence in the record.

## IV.

**[3]** Greger argues for the first time on appeal that the ALJ erred in finding his psychological problems not severe when the VA had rated him 30% disabled due to PTSD and that the ALJ failed to develop the record by not ordering a consultative psychological evaluation. Greger has waived these issues because he did not raise them before the district court. The Ninth Circuit recognizes three exceptions to the general rule that the court will not consider an issue raised for the first time on appeal: "in the 'exceptional' case in which review is necessary to prevent a miscarriage of justice or to preserve the integrity of the judicial process, when a new issue arises while appeal is pending because of a change in the law, or when the issue presented is purely one of law and either does not depend on the factual record developed below, or the pertinent record has been fully developed." *Bolker v. C.I.R.*, 760 F.2d 1039, 1042 (9th Cir. 1985) (citations omitted). The court "will only excuse a failure to comply with this rule when nec-

essary to avoid a manifest injustice." *Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999).

**[4]** Greger argues that the ALJ made legal errors and that it would be an injustice to not remand for consideration of the PTSD issue. We do not believe the ALJ erred in this case or that this is the exceptional case in which review is needed to prevent a miscarriage of justice. Greger never raised the issue of PTSD as a basis for finding him disabled before either the Social Security Administration or the district court. His disability claim prior to this appeal related only to his physical problems. PTSD was only brought up when the ALJ was questioning Greger as to why he had problems getting along with his former supervisor and left his truck-driving job in 1992. It was the ALJ who first raised whether Greger had a rating from the VA for PTSD, and the ALJ specifically inquired about the VA's percentage rating for PTSD and when Greger first received that rating. Nonetheless, Greger, who was represented by counsel at all times, failed to claim PTSD as a basis for his disability. Therefore, the issue is waived.

The dissent suggests that the court should consider these newly-raised issues because they involve a pure question of law, i.e., that the ALJ erred by not referencing the VA's disability rating, as required by *McCartey v. Massanari*, 298 F.3d 1072 (9th Cir. 2002). The claimant in *McCartey*, though, had asserted from the outset that his primary disability was the same impairment for which the VA had rated him 80% disabled, but the ALJ's decision never mentioned the VA's disability rating. Greger never raised the issue of PTSD or his 30% VA disability rating until this appeal.

**[5]** Greger asserts that this is his only opportunity to establish his eligibility for disability benefits, as he cannot file a new claim after this. Greger, however, has had several opportunities over the past few years to raise the issue of his PTSD. His initial claim never mentioned his PTSD or any mental

health problems. He was represented by counsel at his hearing before the ALJ and never claimed at that time that he suffered from disabling PTSD; it was the ALJ who inquired about Greger's PTSD rating from the VA. Greger had an opportunity to brief the PTSD issue before the Appeals Council, but did not. In his appeal to the district court, Greger's new lawyers, in their recitation of the facts, summarized Greger's testimony before the ALJ, including the discussion of Greger's PTSD and 30% disability rating from the VA, but they never suggested that PTSD was a basis for finding Greger was disabled. Only when Greger obtained new counsel for this appeal and it appeared that his claim of physical disabilities would fail did he ever suggest that he was disabled due to PTSD.

**[6]** In sum, our independent review of the record does not reveal any miscarriage of justice or error of law in the administrative proceedings.

Accordingly, the district court's judgment is **AFFIRMED**.

---

FERGUSON, Circuit Judge, dissenting:

Leonard Greger suffers from Post-Traumatic Stress Disorder ("PTSD") arising out of his experiences during his military service in Vietnam. In 1998, the Veterans Administration ("VA") rated Greger as 30% disabled due to his PTSD diagnosis. According to Greger, his PTSD makes it difficult for him to get along with authority, causes him to be irritable, and contributes to his anger control problems. Greger also testified that he has had trouble sleeping due to nightmares. Since 1998, Greger has been on anti-anxiety and anti-depressant medication to control his psychological problems, and previously saw a psychiatrist. In 2000, Greger told a VA examiner that, in addition to his other symptoms, his memory and concentration are poor. That same examiner noted that Greger suffers from "some vague, paranoid thoughts." And during

the examination, Greger took the Mississippi Scale of Combat Stress test and received a raw score of 131, which, according to the VA examiner, "is about average for those diagnosed with PTSD."

PTSD is a tragic disease that commonly interferes with a sufferer's ability to interact with other people and maintain work relationships. *See* Kathleen A. Tarr, *Above and Beyond: Veterans Disabled by Military Service*, 5 GEO. J. ON FIGHTING POVERTY 39, 44 (1997). When determining whether a veteran is eligible for social security disability benefits, therefore, an Administrative Law Judge ("ALJ") must pay particularly close attention to the VA's findings regarding a PTSD diagnosis. *See McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002). Here, in denying Greger benefits, the ALJ failed to even mention that the VA rated Greger as 30% disabled due to his PTSD. This omission is reversible error. *Id.* Additionally, the ALJ's conclusion that Greger's mental impairments are not severe is not supported by substantial evidence. For these reasons, I respectfully dissent from the majority's affirmance of the ALJ's denial of Greger's request for social security disability insurance benefits.

The majority holds that Greger's PTSD-related claims are waived because of his failure to argue them before the District Court. Maj. op. at 11757-58. We have, however, recognized three exceptions to this pleading requirement. *Taniguchi v. Schultz*, 303 F.3d 950, 959 (9th Cir. 2002). Most applicable here is the exception that allows us to consider a claim not raised before the District Court if that claim is "purely one of law and the opposing party would suffer no prejudice as a result of the failure to raise the issue" below. *Id.* Whether an ALJ must consider, on the record, a VA disability rating when reaching his decision is a question of law. *See McCartey*, 298 F.3d at 1076 (creating the rule that an ALJ procedurally errs when he fails to consider a VA finding and does not mention that finding in his opinion); *cf. Silveira v. Apfel*, 204 F.3d 1257, 1260 & n.8 (9th Cir. 2000) (holding that whether an

ALJ should have applied a regulation, which required a finding of disability under certain circumstances, to a particular claimant's case is a pure question of law). Furthermore, in her answering brief, the Commissioner had the opportunity to address this purely legal claim; thus, the Commissioner is not prejudiced by our consideration of the issue. *See id.* at 1260 n.8 (considering a claim raised for the first time on appeal because the claim was a pure issue of law that the Commissioner had the opportunity to respond to on appeal).

Proceeding to the merits of Greger's claim, in *McCartey* we held that an ALJ must generally give great weight to a VA determination of disability. *McCartey*, 298 F.3d at 1076. Such deference is justified because of the "marked similarity" between the purposes and evaluation procedures employed by both the social security and VA federal disability programs. *Id.* If an ALJ chooses to give less weight to a VA determination, therefore, he must give "persuasive, specific, valid reasons for doing so that are supported by the record." *Id.* Reversal is warranted if the ALJ does not provide evidence that he adequately considered the VA's rating, such as by explicitly mentioning that rating in his opinion. *Id.*

Here, despite the fact that Greger informed the ALJ of his VA rating for PTSD, the ALJ made no mention of the VA's finding in his consideration of Greger's disability claim. The ALJ cursorily acknowledged Greger's history of post-traumatic stress disorder and completely failed to reference either the VA's rating or its basis. Further, it is not apparent from the record that the ALJ otherwise considered the VA's rating. The omission is a clear violation of *McCartey*.

Therefore, I would reverse the District Court and remand with instructions to send the case back to the ALJ for additional factual development and consideration of the impact of Greger's PTSD on his ability to function in the workplace.

Remand is especially important in this case because the ALJ's findings regarding Greger's mental impairments are

not supported by substantial evidence. Greger testified that his PTSD makes it hard for him to get along with authority, makes him irritable, and contributes to his anger control problems. The ability to respond "appropriately to supervision, co-workers, and work pressures" is an important part of the assessment of a claimant's functional capacity. *See* 20 C.F.R. § 404.1545(c). The symptoms Greger describes would severely impact his ability to function in any workplace.

The ALJ may not reject Greger's subjective complaints without providing "specific, cogent reasons for the disbelief." *Morgan v. Commissioner*, 169 F.3d 595, 599 (9th Cir. 1999). "Without affirmative evidence showing the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." *Id.* The ALJ countered Greger's description of the severity of his PTSD symptoms by finding that Greger did not seek ongoing treatment for his mental conditions, or ever seek mental status testing.[1] This finding is simply not supported by the evidence. First, the record shows that Greger was taking anti-anxiety and anti-depressant drugs to keep his symptoms under control. Moreover, he was given the Mississippi Scale of Combat Stress test by the VA in 2000 and received an average score for those suffering from PTSD. While this testing took place after the relevant time period, a subsequent diagnosis should still be considered by the ALJ "because it may bear upon the severity of the claimant's condition before the expiration of his insured status." *Loza v. Apfel*, 219 F.3d 378, 396 (5th Cir. 2000).

---

[1]The Veterans Administration notes that many soldiers who show initial signs of PTSD are reluctant to seek treatment because they "may be ashamed of opening themselves up to professionals and are very concerned about taking on a 'sick' or 'weak' persona." Brett T. Litz, *The Unique Circumstances and Mental Health Impact of the Wars in Afghanistan and Iraq*, PTSD Support Services, Aug. 15, 2006, http://www.ptsdsupport.net/PTSD_a%20new_generation.html.

Additionally, the ALJ noted that treating physicians and other health care professionals "have not reported any significant psychological or depressive symptoms." The ALJ then concluded that Greger's PTSD had, at most, a de minimis affect on his ability "to interact socially or adapt." This conclusion is contradicted by the VA's 30% disability rating. The VA undertakes a very thorough review of a claimant's medical history before rating that claimant as disabled. *See McCartey*, 298 F.3d at 1076. Thus, in granting Greger benefits, the VA's health care professionals necessarily would have determined that Greger suffered from significant psychological symptoms. The ALJ's error in not addressing the VA's rating on the record, therefore, is compounded by the fact that the VA's finding contradicts the ALJ's conclusions regarding the severity of Greger's impairment.

For these reasons, a remand is necessary; therefore, I would reverse.