

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

PAMELA BACK,

    Plaintiff - Appellant,

v.

CAROLYN W. COLVIN,

    Defendant - Appellee.

No. 14-35013

D.C. No. 3:13-cv-05053-RSL

MEMORANDUM[*]

Appeal from the United States District Court
for the Western District of Washington
Ronald B. Leighton, District Judge, Presiding

Argued and Submitted June 9, 2016
Seattle, Washington

Before: EBEL,[**] PAEZ, and BYBEE, Circuit Judges.

  Pamela Back appeals the denial of social security disability benefits. We

review the district court's decision de novo, *Valentine v. Comm'r Soc. Sec. Admin.*,

---

  [*]  This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

  [**]  The Honorable David M. Ebel, Senior Circuit Judge for the U.S.
Court of Appeals for the Tenth Circuit, sitting by designation.

574 F.3d 685, 690 (9th Cir. 2009), applying the "highly deferential" substantial evidence standard to the ALJ's determination that Back is not disabled, *id.*; *see also* 42 U.S.C. § 405(g), and affirm.

1. The ALJ's adverse credibility determination against Back is supported by substantial evidence, and the ALJ gave "specific, clear and convincing reasons" for its finding. *Chaudhry v. Astrue*, 688 F.3d 661, 670–71 (9th Cir. 2012). Back claimed to be in constant, debilitating pain that rendered her bedridden "at least four days" a week. But, substantial evidence in the record showed that Back went to Yoga "every Thursday," began going to church and joined the choir, walked her dogs, did yard work, did laundry, cared for her kids, went "beachcombing" for two hours, volunteered for Habitat for Humanity, assaulted a woman, completed 134 hours of community service for the assault, and took a 12-week self defense class. She also sought out employment in housekeeping or companionship services, and some record evidence suggested that family pressures and concerns about parenting—as opposed to debilitating pain—motivated Back to leave full-time employment. Daily activities inconsistent with a claimant's self-described level of pain, *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998), as well as inconsistency in a claimant's reasons for leaving work, *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001), are valid reasons for an adverse credibility finding,

and here, they are supported by substantial evidence. Any error the ALJ committed in saying that Back's fibromyalgia and chronic pain syndrome diagnoses lacked an objective basis in the record was harmless in light of this other evidence.

2. For the same reasons, we affirm the ALJ's partial adverse credibility findings against the testimony of Back's friends and family. Each of these witnesses provided testimony about the severity of Back's pain that roughly matched Back's own description. Back's boyfriend, for example, testified that Back could not "move quickly for any reason without coming to tears from pain." This testimony is inconsistent with Back's claims, noted above, about the severity of her pain, and the ALJ provided "specific reasons" that were "germane to each witness" in finding each of them only partially credible. *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009) (quoting *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1053–54 (9th Cir. 2006)).

3. We reject each of Back's arguments concerning the ALJ's treatment of the medical evidence in the record. First, Dr. Nejad's conclusion as to Back's mental health is unequivocal: Back had "no significant psychiatric barriers that would prevent her from working at this time." Second, the ALJ did not err in giving "little weight" to Dr. Nejad's observation that Back's "most significant

barrier" to employment was her physical pain. There is no evidence whatsoever that Dr. Nejad conducted a physical (as opposed to psychological) examination of Back during her single visit. Thus, the ALJ could properly discount Back's "physical symptoms *as reported* to Dr. Nejad," based on the adverse credibility finding against Back.[1]

Second, the ALJ's treatment of Dr. Peterson's evaluation was appropriate because Peterson simply reviewed Dr. Nejad's report, as well as Back's file, and adopted Dr. Nejad's conclusion that there was no significant barrier to Back working.

Third, the ALJ's conclusion that Back "has an intact psychological capacity [sufficient] to complete an average work week," is supported by substantial evidence. The fact that in 2010 Back was "confused" about an appointment time at the VA, or that in 2007 Nejad noted Back was unfamiliar with the proverb "a

---

[1]We also reject Back's reliance on Social Security Rulings 85-15 and 96-8p. SSR 85-15 applies when there is a "substantial loss of ability" to "understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." Nejad expressly concluded that Back could perform even complex and detailed tasks, as well as "accept instructions from supervisors [and] interact with coworkers and the public." SSR 96-8p, in turn, applies when a claimant's mental and physical impairments limit the claimant's ability to work a regular 40-hour work week. But, again, Back has no such mental limitation, and any claim of a physical limitation was properly discounted based on Back's credibility.

rolling stone gathers no moss," and had trouble counting backwards from 100 by 7s, is hardly compelling enough to overcome, for example, Nejad's conclusion that Back had no mental health barriers to working (so long as she received outpatient treatment).

Fourth, contrary to Back's argument, the ALJ did not ignore Back's various low Global Assessment of Functioning (GAF) scores. The ALJ expressly took note of them but found them unhelpful because such scores take into account factors unrelated to disability (like current financial situation), and do "not have direct correlation to the severity requirements in [Social Security Administration] mental disorders listings" in the relevant federal regulations. Back points to no authority requiring the ALJ to adopt the GAF scores as 1-to-1 indicators of Back's mental health. The ALJ's finding that Back's mental health symptoms were "consistently described as mild to moderate" was supported by substantial evidence. If the ALJ erred in also rejecting the GAF scores based on a faulty belief that they were based on Back's subjective reports to doctors (rather than the doctors' own subjective interpretation of Back's current level of functioning), it was harmless in light of these other reasons.

Fifth, Back's challenge to the ALJ's treatment of the opinions of Drs. Hoskins and Turner is waived, as it was raised for the first time on appeal. *See Greger v. Barnhart*, 464 F.3d 968, 973–74 (9th Cir. 2006).

4.  Finally, even if Back had not similarly waived her challenge to the ALJ's residual functional capacity findings, *see id.*, it would make no difference because her challenge hinges entirely on the above claims of error—none of which is meritorious.

5.  The "key question is not whether there is substantial evidence that could support a finding of disability, but whether there is substantial evidence to support the Commissioner's actual finding that the claimant is not disabled." *Jamerson v. Chater*, 112 F.3d 1064, 1067 (9th Cir. 1997). The ALJ's finding is supported by substantial evidence.

**AFFIRMED**.