NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

OCT 25 2021

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

PAUL ANDREW PEKSENAK,

Plaintiff-Appellant,

v.

KILOLO KIJAKAZI, Acting Commissioner
of Social Security,

Defendant-Appellee.

No.    20-35823

D.C. No. 2:19-cv-01815-BAT

MEMORANDUM[*]

Appeal from the United States District Court
for the Western District of Washington
Brian Tsuchida, Magistrate Judge, Presiding

Argued and Submitted October 7, 2021
Seattle, Washington

Before:  PAEZ, M. SMITH, and NGUYEN, Circuit Judges.
Partial Concurrence and Partial Dissent by Judge PAEZ

Paul Peksenak appeals the district court's judgment affirming the denial of his

application for disability insurance benefits under the Social Security Act.  Because

the parties are familiar with the facts, we do not recount them here, except as

necessary to provide context to our ruling.  We review the district court's order *de*

---

[*]     This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

*novo* and "may set aside the findings of the ALJ if they are based on legal error or are not supported by substantial evidence." *McCartey v. Massanari*, 298 F.3d 1072, 1075 (9th Cir. 2002). We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm in part and reverse in part with instructions to remand to the agency.

1. In March 2011, the Department of Veterans Affairs (VA) found Peksenak 90% disabled. An ALJ's decision "must ordinarily give great weight to a VA determination of disability." *McCartey*, 298 F.3d at 1076. "[T]he ALJ may give less weight to a VA disability rating if he gives persuasive, specific, valid reasons for doing so that are supported by the record." *Id.* However, an ALJ cannot merely "distinguish[] the VA's disability rating on the general ground that the VA and SSA disability inquiries are different." *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 695 (9th Cir. 2009).

The ALJ gave the VA's disability rating "little to no weight" because, unlike the Social Security Administration's process, the VA's rating system does not include "an individualized assessment that focuses on a claimant's ability to perform work in the national economy." In other words, instead of providing "persuasive, specific, valid reasons" for discounting the VA's rating in this case, the ALJ gave little weight to the rating because it was based on a different approach than Social Security determinations. *See McCartey*, 298 F.3d at 1076. This was erroneous. *See Valentine*, 574 F.3d at 695.

The district court held that any error in discounting the VA's rating was harmless because the VA found Peksenak "to be 70% disabled based on depression . . . but the ALJ found Peksenak's depression to be not severe during the adjudicated period." Although the district court offered a plausible explanation for discounting the VA rating, "[l]ong-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ— not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009). Therefore, we cannot find harmless error.

2.     We affirm the ALJ's decision to give little weight to Peksenak's fiancé's testimony because her report was written four years after the date last insured and did not clearly address the relevant time period. *See Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006).

3.     Lastly, we affirm the ALJ's findings at step five that Peksenak could perform jobs existing in the national economy in significant numbers. These findings were supported by substantial evidence, although once the ALJ properly considers the VA's disability ratings, he may need to revisit this determination.

The dissent finds that the ALJ erred in assessing Peksenak's residual functional capacity (RFC) because the record revealed more severe limitations of Peksenak's left wrist and hand. Peksenak did not assign error to the ALJ's RFC

3

assessment and only raised an issue regarding the ALJ's findings at step five—a step that incorporates the RFC. 20 C.F.R. § 404.1520(a)(4) ("Before we go from step three to step four, we assess your [RFC] . . . We use this [RFC] assessment at both step four and step five when we evaluate your claim at these steps."). We find that Peksenak waived this issue by not clearly raising it. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008).

**AFFIRMED in part, REVERSED in part, and REMANDED**.

*Peksenak v. Kijakazi*, No. 20-35823

Paez, J., concurring in part and dissenting in part.

I join parts 1 and 2 of the majority disposition in full. However, because substantial evidence does not support the ALJ's finding at step five that Peksenak could perform jobs existing in the national economy in significant numbers, I respectfully dissent from part 3.

Before proceeding to step five, the ALJ found that Peksenak had the residual functional capacity to perform sedentary work, including the ability to "lift and/or carry no more than five pounds" and "handle occasionally" with his upper left extremity.[1] The ALJ explained his reasoning for this limitation finding as follows:

> Records from August 2010 show that [Peksenak] discussed a possible surgery with his providers but reported that he was worried about missing work and noted that his job entailed lifting heavy jacks and driving, which he was able to do despite his complaints of pain . . .
>
> . . . The claimant was advised that he could undergo an STT fusion but that it would require a period of immobilization and therapy to regain motion and strength [citation omitted]. He was further advised that this was being recommended due to his young age and the heavy type of labor work that he did, and noted that there was "no rush" to move forward with surgery immediately and that it was only recommended if it was "limiting his activities enough" [citation omitted]. *The claimant's failure to immediately proceed with this surgery suggests that it was not limiting his activities enough at the*

---

[1] Peksenak has arthritis in his left hand and pain in his left wrist. The ALJ discusses both conditions together in considering the capacity of Peksenak's "upper left extremity." Peksenak's doctors use the two terms interchangeably. I use the terms "hand" and "wrist" as indicated by the record and analyze the limitations of Peksenak's left wrist and hand together.

1

*time and support[s] a finding that he could have worked within the manipulative limitations noted in the residual functional capacity.*

In other words, the ALJ concluded that Peksenak's left wrist and hand did not fully limit his activities because Peksenak did not immediately proceed with STT fusion surgery. The ALJ then found that Peksenak could lift up to five pounds with his left wrist and hand. The record does not support this finding.

The record shows that the diagnosis and treatment of Peksenak's left wrist and hand proceeded as follows. On July 29, 2010, a VA orthopedic surgeon diagnosed Peksenak with "advanced scaphoid, trapezium, and trapezoid arthritis" in his wrist and recommended "a fusion of the STT joints." On that date, Peksenak scheduled STT fusion surgery. CAR 1163-64 ("The patient did agree to a surgical date and he was set up on the surgical schedule").

This scheduled surgery, however, did not occur. According to Peksenak's primary care physician, Dr. Tarleton, the VA canceled the surgery because its surgeon retired. CAR 786. Dr. Tarleton's notes reflect that Peksenak was then "contracted out to [a] local surgeon," with whom he met on February 1, 2011. This second surgeon recommended STT fusion surgery "because of the heavy type of labor he does" but suggested that it be delayed: "At this point, would really only recommend the surgery if it is limiting his activities enough." Peksenak discussed this appointment with Dr. Tarleton later that same day, who wrote that while the VA surgeon "[h]ad [] described [the surgery] as some involv[ing] two plates," "the

procedure was described [by the outside surgeon] completely differently—sounds like small bone graft and 'bottle cap' plate." Dr. Tarleton determined that Peksenak's appropriate next step was to "reconsult Ortho" rather than to proceed immediately with surgery. CAR 786.

Dr. Tarleton referred Peksenak for re-consultation immediately. The VA's orthopedic surgery unit wrote back: "OUR hand surgeon has retired. We cannot help him make surgical decisions of the hand. We can only go by what our hand surgeon had recommended at the time and we do not have the capacity to see him for this. Sorry[.]" CAR 746. Thus, unable to pursue the recommended re-consultation, Peksenak informed Dr. Tarleton on March 4, 2011 that he would "plan on having surgery with currently scheduled orthopedist." CAR 784.

Peksenak's left wrist and hand continued to deteriorate, but bureaucratic errors prevented him from accessing surgery. By April 1, 2011, according to Dr. Mark Magdaleno, Peksenak "ha[d] retired due to weakness in his left hand" because it was "worthless" and he "constantly" experienced a "stabbing, throbbing pain." On that date, he received x-rays, which the VA mishandled or misplaced: according to a VA orthopedic nurse, writing on September 26, 2011, the outside surgeon "required current xrays that were never provided by VMC in order for care to be done even though they were requested." CAR 1132. Additionally, according to Dr. Tarleton, writing on August 18, 2011, billing problems prevented Peksenak

3

from accessing surgery: Peksenak "was seen by outside orthopedist in Mt. Vernon . . . This was not paid for by the VA and patient couldn't have surgery. Wrist problem is unchanged." CAR 1134.

As noted above, the ALJ, without questioning Peksenak about his reasons for delaying surgery or citing these records, found that Peksenak "discussed a possible surgery" in August (actually July) 2010 and after a second consultation on February 1, 2011, "fail[ed] to immediately proceed with this surgery [because his wrist] was not limiting his activities enough at the time."

The ALJ's finding is incorrect in several ways. First, Peksenak did not merely "discuss" a possible surgery in July 2010; he scheduled the surgery and the VA canceled it. Second, Peksenak did not "fail to immediately proceed with this surgery"; he agreed on March 4, 2011—before the date last insured—to undergo surgery and procured the necessary x-rays within a month. Rather, it appears that the VA's billing and medical records systems prevented him from accessing this surgery immediately. Third, Peksenak's left wrist and hand substantially limited his activities, as he was forced to retire by April 1, 2011. In short, no evidence supports the ALJ's finding that Peksenak's "left hand was not limiting his activities enough" between February 1 and April 1, 2011.

The ALJ's error in analyzing Peksenak's left wrist and hand limitations affected the determination of Peksenak's residual functional capacity and therefore

4

the step five analysis.[2]  Both vocational experts in this case testified that Peksenak was not employable if he could not use his left wrist and hand.  The first testified that "no use of the left hand or wrist" "would preclude him from any competitive activity."  CAR 74.  The second testified that "If the person had no use of the non-dominant hand, probably not, they're probably not going to be able to maintain employment."  CAR 122.  Thus, had the ALJ found that Peksenak could not use his left wrist and hand, he could not have found that Peksenak had the residual functional capacity to perform sedentary work.  Because substantial evidence does not support the ALJ's determination of Peksenak's residual functional capacity, and because this residual functional capacity determination directed the conclusion as to Peksenak's employability, I respectfully dissent from the majority's disposition concerning the ALJ's findings at step five.

---

[2] The majority concludes that Peksenak did not properly raise this issue.  Although Peksenak could have raised the issue more clearly in his briefing, I do not believe that he has waived it.  Additionally, Peksenak addresses the weight of Dr. Magdaleno's report within his challenge to the weight of the VA rating.  Thus, upon remand, when the ALJ reconsiders the weight he should assign to the VA's rating, he may well give further consideration to Dr. Magdaleno's conclusion that Peksenak "retired due to weakness in his left hand" before April 1, 2011.