**FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

NOV 17 2022

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

MISTY DAWN SMARTT,

Plaintiff-Appellant,

v.

KILOLO KIJAKAZI, Acting Commissioner
of Social Security,

Defendant-Appellee.

No.  21-16009

D.C. No. 3:20-cv-08143-JAT

OPINION

Appeal from the United States District Court
for the District of Arizona
James A. Teilborg, District Judge, Presiding

Argued and Submitted October 20, 2022
San Francisco, California

Before:  Ronald Lee Gilman,[*] Consuelo M. Callahan, and Lawrence VanDyke,
Circuit Judges.

Opinion by Judge VanDyke

---

[*] The Honorable Ronald Lee Gilman, United States Circuit Judge for the U.S. Court
of Appeals for the Sixth Circuit, sitting by designation.

# SUMMARY[**]

## Social Security

The panel affirmed the district court's judgment affirming the administrative law judge's ("ALJ") denial of claimant's application for Social Security disability insurance benefits and supplemental security income; and concluded that the ALJ's decision was supported by substantial evidence.

The panel held that the ALJ did not err in discounting the opinion of claimant's treating physician, Dr. Karandish, because the "extreme limitations" described by the physician were incompatible with the rest of the objective medical evidence. First, claimant's *treating* physician was not really her treating physician as that title would normally be understood. Dr. Karandish functioned like a consultative examiner, not a treating physician. Second, the ALJ identified specific conflicts between Dr. Karandish's opinion and the clinical evidence. The ALJ permissibly concluded that Dr. Karandish's assessments were "overly restrictive."

In addition, the ALJ did not err in giving significant weight to the opinion of the consultative examiner, Dr. Gordon, because the examiner's determination that claimant could perform light-exertion work was consistent with the objective medical evidence.

Finally, the panel held that the ALJ provided "clear and convincing" reasons for discounting claimant's subjective pain testimony. Claimant's self-reported limitations were inconsistent with the objective medical evidence, claimant's self-reported daily activities, and claimant's generally conservative treatment plan.

## COUNSEL

Brian Ellexson (argued) and Eric G. Slepian, Slepian Ellexson PLLC, Phoenix, Arizona, for Plaintiff-Appellant.

Asim H. Modi (argued) and Sathya Oum, Special Assistant United States Attorneys; Shea Lita Bond; Peter K. Thompson, Acting Chief Counsel, Region IX, Social Security Administration; Gary M. Restaino, United States Attorney; Office of the United States Attorney, San Francisco, California; for Defendant-Appellee.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

VANDYKE, Circuit Judge:

Claimant Misty Dawn Smartt, an Arizona woman in her forties, filed an application for Social Security disability insurance benefits and supplemental security income. The agency repeatedly denied Smartt's claims. The district court affirmed the ALJ's decision, concluding that the ALJ reached a reasonable determination based on substantial evidence in the record. On appeal, Smartt argues that the ALJ erred by insufficiently supporting his analysis, failing to account for Smartt's symptoms and limitations in the residual functional capacity (RFC) assessment, improperly discounting the opinion of one medical provider while giving undue weight to the opinion of another, and failing to satisfy the "clear and convincing" standard for rejecting subjective symptom testimony.

We hold that the ALJ did not err in discounting the opinion of Smartt's treating physician because the "extreme limitations" described by the physician were incompatible with the rest of the objective medical evidence. Likewise, the ALJ did not err in giving significant weight to the opinion of the consultative examiner because the examiner's determination that Smartt could perform light-exertion work was consistent with the objective medical evidence. Finally, the ALJ provided "clear and convincing" reasons for discounting Smartt's subjective pain testimony. Smartt's self-reported limitations were inconsistent with (1) the objective medical evidence, (2) her self-reported daily activities, and (3) her generally conservative

2

treatment plan. Accordingly, we affirm the district court's decision.

## I.

In June 2015, Smartt slipped on her patio and suffered a head injury. Weeks later, she began to experience pain and weakness in her right arm. She reportedly "tried [V]icodin and tramadol for pain with no relief," then took ibuprofen which "was minimally helping the pain." When she eventually sought medical attention at an emergency room, CT and MRI imaging revealed fractured vertebrae in her neck. She underwent surgery to stabilize her cervical spine and decompress her spinal cord. By all accounts, the surgery was successful. Smartt was discharged from the hospital on August 3, 2015, with instructions to complete eight weeks of antibiotics and to continue wearing a neck brace.

At her follow-up appointment a month later, Smartt's surgeon noted that she "appear[ed] healthy, alert, and in no acute distress." She "continued to recover well following surgery," and her arm strength had largely returned, measuring four on a scale of five. Though she described feeling "wobbly at times," she denied any focal leg weakness and continued to walk without assistance.

About two months post-surgery, Smartt sought care at the Pain Center of Arizona. A pain specialist evaluated Smartt, who complained generally of pain in her head, neck, and back. Although Smartt reported weakness and difficulty reaching and lifting, the specialist found no abnormalities. She experienced some

3

spinal tenderness but maintained normal gait, coordination, sensation, muscle strength, and tone. At follow-up visits, the pain specialist noted Smartt "is benefiting from opioid therapy." Despite normal physical exams, Smartt rated her pain as eight to ten out of ten, and alleged that her pain was aggravated by "everything." An inpatient provider observed "opioid dependency."

Smartt regularly saw a team of nurse practitioners at the Pain Center who monitored her chronic opioid use. When she decided to pursue her Social Security disability claim, Smartt asked one of her nurse practitioners to complete her paperwork. He explained he could not do so, and she would need a physician's signature instead. So Smartt saw a Pain Center physician, Dr. Karandish, who became her "treating" physician for the purpose of completing her disability claim paperwork. At her first appointment with Dr. Karandish, Smartt refused to have her vitals checked "because she [wa]s only [t]here to have [the doctor] sign papers." After an "unremarkable" and "normal" physical examination, Dr. Karandish completed Smartt's assessment, awarding the most "severe" or restrictive option in each category and marking "yes" in response to "additional limitations" without further explanation. Smartt returned to see Dr. Karandish twice more for nearly identical work assessments in 2018 and 2019. Smartt saw Dr. Karandish just three times over the course of three years, each time to do an evaluation and complete paperwork related to her disability claims.

4

Smartt applied for Social Security disability insurance benefits and supplemental security income in August and September of 2015, claiming that she became disabled on July 22, 2015, as a result of her "broken neck, crushed vertebrae, and osteomyelitis." At the first administrative hearing, the ALJ ordered Smartt to obtain an assessment from a consultative examiner, so she saw Dr. Gordon. Dr. Gordon concluded Smartt was capable of more than Dr. Karandish's "severe" report indicated. In Dr. Gordon's opinion, Smartt was capable of light-exertion work involving sitting, standing, and walking for limited periods, as well as carrying up to twenty pounds.

Ultimately, the agency denied Smartt's claims three times: after initial review, again upon reconsideration, and finally in an ALJ decision following a hearing. The agency's Appeals Council subsequently denied review. On appeal, the district court affirmed the ALJ's denial of benefits, concluding that substantial evidence supported a finding that Smartt lacked a disability under the statute. Smartt now appeals the district court's order.

## II.

We have jurisdiction under 28 U.S.C. § 1291. "We review a district court's judgment de novo" and "set aside a denial of benefits only if it is not supported by substantial evidence or is based on legal error." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (citation omitted). "Substantial evidence … is

such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (citation omitted). "Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed." *Id.* (cleaned up).

Against that backdrop, when faced with contradicted medical testimony, an ALJ must provide "specific and legitimate reasons supported by substantial evidence in the record" for rejecting a treating physician's opinion. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Ultimately, the "ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041–42 (9th Cir. 2008); *see also Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

When objective medical evidence is inconsistent with a claimant's subjective testimony, an ALJ can "reject the claimant's testimony about the severity of her symptoms only by offering specific, clear, and convincing reasons for doing so." *Garrison v. Colvin*, 759 F.3d 995, 1014–15 (9th Cir. 2014). And an ALJ may not "reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). This means that an ALJ cannot effectively render a claimant's subjective symptom testimony superfluous by demanding positive objective medical evidence "fully corroborat[ing]" every allegation within the subjective testimony.

6

## III.

We affirm the district court because (1) the ALJ did not err in weighing the opinions of the treating physician, Dr. Karandish, and the consultative examiner, Dr. Gordon, offering specific and legitimate reasons supported by substantial evidence, and (2) the ALJ properly discounted Smartt's subjective pain testimony by providing a specific, clear, and convincing rationale based on inconsistencies with the record, Smartt's self-reported daily activities, and her generally conservative treatment plan. We need not consider Smartt's remaining arguments, which are waived because she raises them for the first time on appeal.

## A.

The ALJ found that the "extreme limitations" described in Dr. Karandish's assessments were not supported by the objective medical record. As long as a treating physician's opinion "is well-supported … and is not inconsistent with the other substantial evidence in [the] case record, we will give it controlling weight." 20 C.F.R. § 404.1527(c)(2). A treating physician's opinion is generally "entitled to greater deference than [opinions] of examining physicians." *Lester*, 81 F.3d at 831 n.8. This principle assumes that a treating physician has an established, long-term relationship with the claimant and can offer "a detailed, longitudinal picture of [a claimant's] medical impairments," 20 C.F.R. § 404.1527(c)(2), because the treating physician has been able "to observe and know the patient as an individual." *Woods*

7

*v. Kijakazi*, 32 F.4th 785, 789 (9th Cir. 2022) (citation omitted). By extension, the opinion of a consultative examining physician is entitled to greater weight than the opinion of a nonexamining physician. *Id.* To reject the opinion of a treating or examining physician where the opinion is incompatible with other evidence, the ALJ must provide "specific and legitimate reasons that are supported by substantial evidence." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (citation omitted).

Here, the ALJ properly discounted the treating physician's opinion by identifying specific reasons supported by substantial evidence. First, it bears noting that Smartt's "treating" physician, Dr. Karandish, was not really her *treating* physician as that title would normally be understood. The ALJ observed that their relationship was limited to three visits over three years for the purpose of preparing three corresponding Social Security assessments or questionnaires. Dr. Karandish's relationship with Smartt began only because her primary provider, a nurse practitioner, told her he was not qualified to sign her disability paperwork. The sole purpose of her visits with Dr. Karandish was to advance her disability claim. She was not presenting for treatment; indeed, she declined a standard vitals check because it wasn't relevant to her goal "to have [the doctor] sign papers." In short, Dr. Karandish functioned like a consultative examiner, not a treating physician. He had no broader context or "longitudinal" perspective, because he assessed her for the first time when she began the Social Security application process.

Second, the ALJ identified specific conflicts between Dr. Karandish's opinion and the clinical evidence. Dr. Karandish found that Smartt was unable to work because, in an eight-hour workday, she was incapable of (1) sitting for more than two hours, (2) standing or walking for more than two hours, and (3) lifting or carrying more than ten pounds. He also noted that she would need to "alternate between sitting, standing, or walking" every one to twenty minutes. In a subsequent report, rather than completing the itemized form by assigning percentages to Smartt's capabilities (e.g., use of her right hand), he simply wrote "unable to work." By contrast, the ALJ identified contemporaneous medical records showing Smartt maintained "normal range of motion" and use of her extremities. The ALJ cited records indicating Smartt was "neurologically intact," "could ambulate without an assistive device," and "improved in her condition after surgery."

The ALJ permissibly concluded that Dr. Karandish's assessments were "overly restrictive," given that most of the medical records described Smartt's documented improvement in strength, walking, and daily activities. Because the ALJ identified specific and legitimate inconsistencies supported by substantial evidence, there was no error in discounting Dr. Karandish's opinion.

By contrast, the consultative examiner Dr. Gordon found Smartt capable of performing a range of light-exertion work consistent with sitting, standing, and walking up to four hours in an eight-hour workday. Although Smartt complained of

9

pain in her cervical spine and extremities, Dr. Gordon observed that she had normal muscle strength and tone, suggesting that she could "frequently" or "occasionally" carry up to twenty pounds. He also noted that she was able to sit comfortably for the duration of the half-hour appointment, belying Dr. Karandish's report that she must more frequently alternate between sitting and standing.

Smartt makes much of Dr. Gordon's statement that "[t]he claimant's walker is medically necessary *all the time*." (emphasis added). And later in his report, Dr. Gordon marked "yes" in response to the assessment's boilerplate question: "Does this individual require the use of a cane to ambulate?" But these statements are not necessarily inconsistent with other parts of his report. Dr. Gordon's statement in one part of his report that a "walker is medically necessary all the time" can plausibly be explained as Smartt's own subjective assessment. This statement is listed under "History and Physical," among other patient-reported facts that Dr. Gordon could not have verified, such as that (1) she is able to complete self-care activities (e.g., meals, hygiene, light housework); (2) she is able to drive; and (3) her narcotic pain medication helps minimally. Distinguishing his own opinion from the claimant's, Dr. Gordon subsequently indicated in his "Medical Source Statement" that Smartt can, for up to fifty feet, ambulate independently "without using a wheelchair, walker, or [two] canes or [two] crutches."

Taken together, Dr. Gordon's statements are, at best, not internally

inconsistent and, at worst, ambiguous. But even assuming the latter, "the ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence." *Tommasetti*, 533 F.3d at 1041. The ALJ resolved any discrepancies in Dr. Gordon's report to mean that Smartt needs assistance when ambulating any distance over fifty feet. Thus, the ALJ did not err in giving more weight to Dr. Gordon's opinion, and reasonably determined it was consistent with the rest of the objective medical record. *See Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

## B.

The ALJ properly discounted Smartt's subjective pain testimony and self-reported limitations because (1) the objective medical evidence was inconsistent with those limitations, (2) Smartt acknowledged that she routinely performed several daily activities, notwithstanding her caveats, and (3) generally her treatment had been conservative.

When a claimant presents objective medical evidence establishing an impairment "that could reasonably produce the symptoms of which she complains, an adverse credibility finding must be based on clear and convincing reasons." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008) (cleaned up). This heightened standard does not apply when there is affirmative evidence of malingering. *Id.* The ALJ here stopped short of characterizing the evidence as proof of malingering: Smartt presented medical records supporting

11

multiple diagnoses—chronic cervical spine pain, cardiovascular disorders, respiratory issues, and recurring cellulitis—that could reasonably produce the pain she describes. Accordingly, we must determine whether the ALJ properly discounted Smartt's subjective testimony under the "clear and convincing" standard.

**1.**

Providing clear and convincing evidence of inconsistencies, the ALJ found that Smartt's "allegations concerning the intensity, persistence, and limiting effects of her symptoms are not consistent with the objective evidence of record."

First, the ALJ identified a direct contradiction in Smartt's testimony regarding her ability to drive. At hearings before the ALJ in August 2018 and April 2019, Smartt repeatedly testified that she had not driven since her neck surgery in 2015. But in her Daily Activities Questionnaire dated April 10, 2016, Smartt reported that she routinely drove a car, and her typical daily activities included driving her daughter to school.

Second, Smartt's inconsistent use of mobility aids belies her testimony about the severity of her limitations. In her agency appeal in 2016, Smartt reported: "After contracting cellulitis in my right leg, which was injured in 2009, I have been unable to walk without the assistance of a walker." Smartt also testified that she uses a cane, crutch, and wheelchair for assistance. But the ALJ identified multiple specific examples of Smartt's inconsistent use of mobility aids contrary to her testimony

about the extent of her limitations.

Even when she visited the emergency room for pain and swelling in her right leg on March 10, 2016, Smartt was "[a]ble to ambulate on her leg" with no mention of a mobility aid. At multiple hospital admissions and doctor's appointments in 2017, medical records show she was able to "ambulate without [an] assistive device" of any sort, including a cane or walker. At another emergency room visit on October 5, 2017, Smartt arrived with pain and redness in her right foot because she had stepped on glass a month prior. The emergency room physician made no mention of Smartt presenting with a mobility aid; in fact, because she arrived without one, the physician temporarily "put [her] on crutches" when discharged. Smartt had "[n]o difficulty with ambulation or balance" during a subsequent hospital admission in 2018, and nothing in the record indicates she used a mobility aid on that occasion.

By contrast, Smartt typically appeared with a walker at Pain Center appointments and visits associated with her disability application. Despite her sporadic use of mobility aids, she told the examining physician in September 2018 that she "ha[d] been using a walker … since 2016." Noting these inconsistencies, the ALJ properly discounted Smartt's subjective pain testimony by identifying specific discrepancies between her testimony and the objective medical evidence.

In his decision, the ALJ also noted that Smartt's symptoms are "not *entirely* consistent with the medical evidence." (emphasis added). Smartt argues that, by

using this phrase, the ALJ improperly penalized her for not providing objective medical evidence fully corroborating the severity of her self-reported symptoms. Smartt is correct that an ALJ may not "reject a claimant's subjective complaints based *solely* on a lack of medical evidence to *fully corroborate* the alleged severity of pain." *Burch*, 400 F.3d at 680 (emphases added). But Smartt incorrectly reads the ALJ's "not entirely consistent" language as committing the error identified in *Burch*.

In contrast to Smartt's interpretation, the district court interpreted the ALJ's "not entirely consistent" phrase to mean "the record contains conflicting evidence" between Smartt's subjective symptom testimony and other evidence in the record, including the objective medical evidence. The context of the ALJ's decision as a whole demonstrates that this is the correct reading of the ALJ's meaning because, as discussed above, the ALJ highlighted several inconsistencies between Smartt's subjective symptom testimony and the objective medical evidence in the record, including record evidence about Smartt's driving and her irregular use of mobility aids.

Claimants like Smartt sometimes mischaracterize *Burch* as completely forbidding an ALJ from using inconsistent objective medical evidence in the record to discount subjective symptom testimony. That is a misreading of *Burch*. When objective medical evidence in the record is *inconsistent* with the claimant's

subjective testimony, the ALJ may indeed weigh it as undercutting such testimony. We have upheld ALJ decisions that do just that in many cases. *See, e.g.*, *Chaudhry v. Astrue*, 688 F.3d 661, 672–73 (9th Cir. 2012) (affirming an ALJ's determination that interpreted and preferred objective medical evidence to subjective testimony); *Burch*, 400 F.3d at 681 (affirming an ALJ's discounting of subjective claims of disabling pain based on objective medical evidence and a claimant's daily activities); *Thomas*, 278 F.3d at 959 (affirming an ALJ's decision discounting a claimant's testimony after "finding no objective medical evidence to support [claimant's] descriptions of her pain and limitations," and "that [claimant] was able to perform various household chores such as cooking, laundry, washing dishes, and shopping"); *Osenbrock v. Apfel*, 240 F.3d 1157, 1165–66 (9th Cir. 2001) (affirming an ALJ's rejection of allegations of disabling pain based on normal physical examinations).

Instead, what *Burch* requires is that an ALJ cannot insist on clear medical evidence to support each part of a claimant's subjective pain testimony when there is no objective testimony evincing otherwise. That is, an ALJ cannot effectively render a claimant's subjective symptom testimony superfluous by demanding positive objective medical evidence "fully corroborat[ing]" every allegation within the subjective testimony. *Burch*, 400 F.3d at 681; *see also Luna v. Bowen*, 834 F.2d 161, 165 (10th Cir. 1987) ("If objective medical evidence must establish that severe pain exists, subjective testimony serves no purpose at all."). That—and only that—

15

is what *Burch* forbids.[1]

Indeed, if *Burch* was applied as aggressively as Smartt insists, an ALJ would be required in many cases to simply accept a claimant's subjective symptom testimony notwithstanding inconsistencies between that testimony and the other objective medical evidence in the record, allowing a claimant's subjective evidence to effectively trump all other evidence in a case. This misinterpretation of *Burch* conflicts with other precedents from our court, where we've made clear that an ALJ is not "required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to" the Social Security Act. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)), *superseded on other grounds by* 20 C.F.R. § 404.1502(a).

Ultimately, the "clear and convincing" standard requires an ALJ to show his

---

[1] Indeed, requiring "full corroboration" of all subjective symptom testimony would run afoul, not just of *Burch*, but also the Social Security Administration's own regulations. Addressing the claimant, the relevant regulation reads in part:

> [W]e will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements.

20 C.F.R. § 404.1529(c)(2). Thus, the regulations and *Burch* are in full accord. But neither *Burch* nor the regulations prohibit ALJs from doing what they do all the time: relying on any *contradictions* between a claimant's subjective symptom testimony and the objective medical evidence in the record to discount the symptom testimony.

16

work, which the ALJ did here. In discounting Smartt's testimony, the ALJ identified "specific, clear, and convincing reasons supporting a finding that [Smartt's] limitations were not as severe as [she] claimed." *Ahearn v. Saul*, 988 F.3d 1111, 1117 (9th Cir. 2021). "Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony." *Carmickle*, 533 F.3d at 1161. The standard isn't whether our court is convinced, but instead whether the ALJ's rationale is clear enough that it has the power to convince. Here, it does: the ALJ cited specific, clear, and convincing examples across a multi-year period contrasting Smartt's subjective pain testimony with objective medical evidence.[2]

**2.**

An ALJ may also consider "whether the claimant engages in daily activities inconsistent with the alleged symptoms." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007). Even if the claimant experiences some difficulty or pain, her daily activities "may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113. The ALJ made a reasonable determination based on specific, clear,

---

[2] ALJs commonly use the phrase "not entirely consistent" the same way the ALJ did in this case—to mean that the claimant's testimony is *inconsistent* with other evidence in the record. But claimants also commonly confuse this phrasing with the ALJ improperly concluding that a claimant's symptom testimony was not "fully corroborated" by the objective medical evidence. To avoid continuing confusion in claimants' review of their decisions, ALJs might consider replacing the phrase "not entirely consistent" with simply "inconsistent."

and convincing evidence that Smartt's daily activities were inconsistent with the alleged severity of her limitations.

Describing the "kinds of things [she does] on an average day," Smartt listed cooking, cleaning, and caring for her daughter, including bathing, feeding, and taking her to school. She also reported doing laundry, grocery shopping with the assistance of her mother, and completing various chores, albeit in short increments due to pain. When asked about her hobbies, Smartt reported playing board games and doing crafts. Citing Smartt's responses, the ALJ reasonably concluded that Smartt was able to "engage[] in a somewhat normal level of daily activity and interaction" despite her limitations. In fact, Smartt's daily activities require many of the same "capabilities … necessary for obtaining and maintaining employment."

It is not the court's role to "second-guess" an ALJ's reasonable interpretation of a claimant's testimony. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Thomas*, 278 F.3d at 959 (affirming an ALJ's decision discounting a claimant's testimony after finding that the claimant "was able to perform various household chores such as cooking, laundry, washing dishes, and shopping"). Here, the ALJ's determination that Smartt's self-reported activities were inconsistent with the constant "10/10" pain she described was not unreasonable.[3]

---

[3] Smartt criticizes the ALJ for providing "a mere list of [her daily] activities," without also listing in the same part of the ALJ's decision all of the limitations that Smartt included when testifying about her activities. But having properly discounted

18

**3.**

The ALJ also properly discounted Smartt's subjective pain testimony in light of Smartt's generally conservative treatment plan. "[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (quoting *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995)). Smartt argues that her cervical spine surgery was not "conservative treatment." That is true. But while the surgery was not conservative treatment, it was an initial stabilization measure following her injury. Overall, other than the initial surgical repair, "[t]he treatment records reveal [that Smartt] received routine and conservative treatment since the alleged onset date."[4] After Smartt's surgery, the ALJ cited documented evidence of "conservative treatment," including physical therapy, temporary use of a neck brace and wheelchair, and ongoing pain medication. As a result of these measures, the record shows both self-reported and objective improvement. The ALJ did not err in concluding that such ongoing conservative treatment and overall improvement are

---

Smartt's subjective testimony elsewhere in his decision, the ALJ did not need to include in his list of Smartt's daily activities all of her caveats accompanying her description of those activities.

[4] The district court and the ALJ also acknowledged that, between 2016 and 2019, Smartt was intermittently hospitalized for pneumonia, stroke, seizures, and recurring cellulitis in her leg. But the ALJ determined that these conditions were temporary, "managed medically" with conservative treatment, and therefore "nonsevere."

19

inconsistent with Smartt's testimony as to the severity of her impairments. The ALJ supported his specific, clear, and convincing findings with substantial evidence in the record.

## C.

We need not address Smartt's remaining arguments because she waived them by not raising them before the district court. *See Greger v. Barnhart*, 464 F.3d 968, 973 (9th Cir. 2006). We generally will not consider an issue raised for the first time on appeal, with three exceptions: (1) "in the 'exceptional' case in which review is necessary to prevent a miscarriage of justice or to preserve the integrity of the judicial process," (2) "when a new issue arises while appeal is pending because of a change in the law," or (3) "when the issue presented is purely one of law and either does not depend on the factual record developed below, or the pertinent record has been fully developed." *Id.* (citations omitted). None of these exceptions apply here.[5]

## IV.

We affirm the district court's conclusion that the ALJ properly discounted the opinion of Smartt's treating physician in favor of the consultative examiner's opinion based on the objective medical evidence. The ALJ also provided clear and

---

[5] Smartt fails to respond to the government's waiver argument, except to correctly point out that her counsel before the district court raised the walker-versus-cane "inconsistency" in Dr. Gordon's assessment. We agree that this issue was not waived, and it is addressed in Part III.A above.

20

convincing evidence for discounting Smartt's subjective pain testimony and self-reported limitations. In sum, the ALJ's decision is supported by substantial evidence.

**AFFIRMED.**